CONLAN, J.
This is an action by plaintiff, as a mortgagee of an airplane, against T. C. Rice, recorder of San Mateo County and Edmund Godchaux, recorder of the city and county of San Francisco, to recover the sum of $1250 claimed as damages suffered by plaintiff by reason of the alleged omission of the defendants, in their capacity as county recorders, to comply with the duty imposed on such officers under section 4130 of the Political Code, as it read at the times in question.
Under date of May 17, 1932, the mortgage of the airplane had been made by its owner, Paul San Martino, to the plaintiff, his sister, to secure a loan of $1600. The plane was at that time at Mills Field in San Mateo County; but it was not until August 26, 1932, that the mortgage was acknowledged, verified, and thereupon recorded in the office of the county recorder, T. C. Rice, in volume 573 of official records, page 164.
Subsequently the plane was removed to San Francisco; and on October 3, 1932, the mortgage was recorded in the office of the recorder of the city and county of San Francisco, Edmund Godchaux, in volume 2421 of official records, page 434.
At the times under consideration section 4130 of the Political Code provided, among other things, that when a mortgage was filed in the office of a county recorder, purporting to create a lien upon “livestock, vehicles (other than motor *Supp. 777 vehicles) or any other migratory chattels ’ ’, the recorder should collect, in addition to the recording charge, a fee of seventy-five cents, and thereupon should make, over his official signature, a certificate on forms provided for the purpose, and forthwith transmit such certificate to the secretary of state together with fifty cents of the special fee collected.
And by section 408 of the same code it was provided that the certificate should show the names of the mortgagor and the mortgagee, the date of record, the amount secured, and a description of the mortgaged property. As a means of notice to the public, the secretary of state was required to keep indices of such certificates in books labelled ‘ ‘ Certificates of Mortgage of Migratory Personal Property”.
When plaintiff’s mortgage was recorded in the counties mentioned, plaintiff did not tender, nor did the recorders demand, the special fee of seventy-five cents. The recorder of San Mateo County did not at any time make, or transmit to the secretary of state, any certificate of the recordation of the mortgage; but a certificate was transmitted on December 22, 1932, by the recorder of the city and county of San Francisco, Edmund Godchaux.
At that time section 2965 of the Civil Code, in relation to subsequent removal of mortgaged personalty from the county in which it was situated when mortgaged, provided that the lien of the mortgage should not be affected thereby for thirty days after the removal; but, with certain exceptions, the lien was not preserved after the expiration of thirty days, unless the mortgage had been recorded in the county to which the removal had been made. One of the exceptions was to the effect that if a mortgage of “livestock, vehicles (other than motor vehicles) or other migratory chattels ’ ’ had been duly recorded in the office of a county recorder in conformity with the general law relating to chattel mortgages (sec. 2959, Civ. Code), and within thirty days thereafter the county recorder’s certificate of such recordation had been filed with the secretary of state, then such mortgaged property might be removed to any county of the state without in any way affecting the lien of the mortgage.
On December 15, 1932, the airplane was, and for more than thirty days prior thereto had been, in Alameda County without any recordation of the mortgage in that county. On that day a judgment creditor of the mortgagor caused exeeu *Supp. 778 tion to be levied on the airplane by the sheriff of Alameda County; and execution sale was made on January 21, 1933.
The trial court found in the present action that at the time of the levy the plane was of the reasonable market value of $1200, but that it was not a migratory chattel within the meaning of section 4130, and that neither defendant had been under duty to transmit to the secretary of state the certificate mentioned in that section. Accordingly judgment-was rendered in favor of the defendants, and plaintiff’s appeal is from that judgment.
The fundamental question before us is whether an airplane was at the time included within the statutory category of vehicles (other than motor vehicles) or of migratory chattels.
In section 2 of the Vehicle Act of 1931 (the statute applicable at the times in question), which has been reenacted with slight modification of terms in section 311, read with section 450 of the Vehicle Code of 1935, the word “vehicle” is defined as follows: “Every device in, upon or by which any person or property is or may be transported or drawn upon a public highway excepting devices moved by human power or used exclusively upon stationary rails or tracks; provided that for the purposes of this act, a bicycle shall be deemed a vehicle.”
And section 3 of the Act of 1931, like section 32 of the Vehicle Code of 1935, defines a “motor vehicle” as a vehicle which is self-propelled. Under sections 2 and 3 of the Act of 1931, read together, a motor vehicle, within the meaning of the statute, is then a self-propelled device in, upon or- by which any person or property is or may be transported or drawn upon a public highway.
The only distinction between the terms “vehicle” and “motor-vehicle”, as defined in the act, is that a motor vehicle is a device self-propelled, while a vehicle is a device propelled by some force other than by its own, or by human, power. But both are put in the classification of devices which are operated on a public highway.
The definition of “vehicle” as given in the Vehicle Act is consistent with the usual acceptation of the word, which is defined in Webster’s New International Dictionary as that in or by which any person or thing is or may be carried, especially on land.
*Supp. 779 In the California Aircraft Statute of 1921 (p. 1421) the term, aircraft, was made to include every kind of vehicle or structure intended for use as a means of transporting passengers or goods or both in the air. And by the statute of 1929 (p. 1874) the definition was amended to conform to that in the Federal Air Commerce Act of 1926 (44 Stat. at Large, p. 573, sec. 9; 49 U. S. C. A., sec. 179) wherein the word is defined to mean “any contrivance now known or hereafter invented, used or designed for navigation of or flight in the air; except a parachute or other contrivance designed for such navigation but used primarily as safety equipment”.
In Florida the question arose whether airplanes were motor vehicles within the meaning of the tax laws, so as to be subject to an ad valorem tax imposed on all personal property except motor vehicles. The legislature had defined “motor vehicles” to include motorcycles, automobiles, motor trucks and all other motor vehicles operated over the public streets and highways of the state. In an opinion rendered by the attorney-general (1932 U. S. Av. R. 252) he held that the legislature had in mind only motor vehicles propelled on or over the highways, and that consequently airplanes were subject to the ad valorem tax.
In a case of theft of an airplane in Illinois, which was transported to Oklahoma, the United States Supreme Court had occasion to determine in McBoyle v. United States, 283 U. S. 25 [51 Sup. Ct. 340, 75 L. Ed. 816], whether the provisions of the National Motor Vehicle Theft Act applied to aircraft. (41 Stats. 324; 18 U. S. C. A., sec. 408.) The definition given in section 2 of the act declares: “the term ‘motor vehicle’ shall include an automobile, automobile truck, automobile wagon, motorcycle, or any other self-propelled vehicle not designed for running on rails”. The accused, McBoyle, had been convicted of violation of the act in the district court in Oklahoma; and on appeal to the Circuit Court of Appeals (43 Fed. (2d) 273) the judgment was affirmed, with one of the judges dissenting. That judgment was reviewed and reversed by the Supreme Court, supra, Justice Holmes writing the opinion. After quoting the definition given in section 2 of the act, he said :
“The question is the meaning of the word ‘vehicle’ in the phrase ‘any other self propelled vehicle not designed for running on rails’. No doubt etymologically it is possible to use the word to signify a conveyance working on land, *Supp. 780 water or air, and sometimes legislation extends the use in that direction, e. g., land and air, water being separately provided for, in the Tariff Act . . . But in every-day speech ‘vehicle’ calls up the picture of a thing moving on land. Thus in Rev. Stats. Sec. 4, intended, the Government suggests, rather to enlarge than to restrict the definition, vehicle includes every contrivance capable of being used ‘as a means of transportation on land’. And this is repeated, expressly excluding aircraft, in the Tariff Act, June 17, 1930, Ch. 997, Sec. 401 (b); 46 Stat. 590, 708. So here, the phrase under discussion calls up the popular picture. For after including automobile truck, automobile wagon and motor cycle, the words, ‘any other self-propelled vehicle not designed for running on rails’, still indicate that a vehicle in the popular sense, that is a vehicle running on land, is the theme. It is a vehicle that runs, not something, not commonly called a vehicle, that flies. ”...
“Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear. When a rule of conduct is laid down in words that evoke in the common mind only the picture of vehicles moving on land, the statute should not be extended to aircraft, simply because it may seem to us that a similar policy applies, or upon the speculation that, if the legislature had thought of it, very likely broader words would have been used. United States v. Bhagat Singh Thind, 261 U. S. 204, 209 [43 Sup. Ct. 338, 67 L. Ed. 616].”
Since an airplane is not a device for transportation of persons or property upon a public highway, we are of the opinion that within the meaning of the provisions invoked from section 4130 of the Political Code, an airplane should not be classed as either a vehicle or a motor vehicle. Inasmuch as a motor vehicle, which is a self-propelled contrivance for transportation on land, was excepted from the operation of the section, there would be no sense in denying like exception to a self-propelled airplane, differing from the status of a motor vehicle only in being a contrivance for navigation of, or flight in, the air.
*Supp. 781 It remains to consider whether for the purposes of the section an airplane should be deemed a “migratory chattel”, or merely a chattel according to the ordinary acceptation of the latter term.
In Webster’s New International Dictionary the word “migrate” is defined to mean: “1. To go from one place to another; esp., to move from one country, region, or place of abode or sojourn to another, with a view to residence; to change one’s place of residence; to move; as, the Moors who migrated from Africa to Spain; to migrate to the West; 2. To pass periodically from one region or climate to another for feeding or breeding, as various birds and animals.”
“Migratory” is similarly defined to mean: “1. Making a migration or migrations; moving habitually or occasionally from one region or climate to another; disposed to migration. 2. Roving; wandering; nomad; as, migratory habits. 3. Of or pertaining to migration.”
We have of late heard a good deal about “migratory agricultural workers”; and in defining “migration” the same authority speaks of the migration of individuals, birds, mammals, bats, fish and insects.
From these definitions it will be noted that they all speak of animate bodies of one character or another, which move through habit or disposition.
The word “chattels” includes animate property (Smith v. Wilcox, 24 N. Y. 353, 358 [82 Am. Dec. 302]); and has been held to be applicable to dogs. (See cases cited in note in 67 Am. St. Rep., at p. 290.)
The descriptive term “migratory” applies especially to animals whose instincts prompt them to make seasonal changes of habitat. Such animals often move, as does livestock, from place to place during recurring seasons in search of their natural means of subsistence.
It was not until 1923 that sections 2965 of the Civil Code and 4130 of the Political Code, as originally enacted, were amended to make special provision in relation to mortgages of livestock, vehicles (other than motor vehicles) and other migratory chattels. At that time airplanes were not novelties. They had played a notable part in the World War, and were in use thereafter as a means of cross-country transportation. If it had been intended to bring airplanes within the purview of the sections so amended, it is reasonable to infer that the legislature would have been as studious in *Supp. 782 manifesting such an intention as in specifying livestock and vehicles, and would not have exposed aviators and county recorders to the hazard of misinterpretation of a term ordinarily applied to animate bodies. As Judge Holmes said, fair warning of the law’s intent in such matters should be given to the world in language that the common world will understand. The words “migratory chattels” do not evoke in the common mind a picture of flying machines. They navigate the air as ships do the sea, rather than migrate like livestock and other animals.
And the statute should not by forced or broad construction be made so elastic as to subject county recorders to severe penalties upon the conjecture that the legislature intended to enwrap airplanes in the ambiguities of the expression, “migratory chattels”. If the legislature had thought of airplanes, it is reasonable to conclude that words specific enough to identify them would have been used. The very fact that airplanes were not specifically mentioned points to an intention not to apply to them the policy applied to livestock and vehicles other than motor vehicles.
This view is strengthened by the statutory amendments made in 1935, whereby section 2959 of the Civil Code was repealed, and sections 2957 and 2965 were so reconstructed that, instead of referring to “migratory chattels”, they made use of the expression “animate personal property”. (Stats. 1935, at page 2225.) By other amendments of sections 408 and 4130 of the Political Code (Stats. 1935, p. 1009) the provisions for transmission of a certificate by a county recorder to the secretary of state were deleted.
We conclude that the decision of the trial court in favor of the defendants was based on a sound interpretation of the language of the statute; and the judgment is therefore affirmed.
Johnson, P. J., and Jacks, J., pro tern., concurred.