[No. D057707. Fourth Dist., Div. One. Feb. 28, 2012.]

SHAWNEE SCHARER, Plaintiff and Appellant, v.
SAN LUIS REY EQUINE HOSPITAL, INC., et al., Defendants and
Respondents.

422

## COUNSEL

Law Offices of John Nowakowski and John G. Nowakowski for Plaintiff and Appellant.

Law Office of Thomas A. Marshall, Thomas A. Marshall, Linda Sinclair and Susan Andersen for Defendants and Respondents San Luis Rey Equine Hospital, Inc., and Joseph H. Cannon.

Wallace, Brown & Schwartz, George M. Wallace and Lisa J. Brown for Defendant and Respondent Barrie Grant.

Gordon & Rees, Kenneth S. Perri and Jan K. Buddingh, Jr., for Defendant and Respondent Brad C. Scheuch.

## OPINION

**NARES, J.**—This case involves alleged veterinary malpractice by defendants San Luis Rey Equine Hospital, Inc. (SLREH), Barrie Grant, D.V.M., Joseph H. Cannon, D.V.M., and Brad C. Scheuch, D.V.M. (collectively, defendants), arising out of the death of plaintiff Shawnee Scharer's horse. Defendants brought motions for summary judgment, asserting the claim was barred by the one-year statute of limitations that applies to claims for veterinary malpractice under Code of Civil Procedure section 340, subdivision (c) (all further undesignated statutory references are to the Code of Civil Procedure). Scharer opposed the motion, arguing that the statute of limitations was tolled because she sent a prelawsuit notice of intent to sue under section 364.

The court granted defendants' motions for summary judgment, finding that section 364 did not apply because it required a notice of intent to sue and extended the statute of limitations period only for malpractice claims that result in personal injury or wrongful death, and claims for injury or death of an animal are for property damage.

Scharer appeals, asserting (1) section 364 letters of intent to sue should extend the statute of limitations for malpractice claims against veterinarians

in the same manner the statute does for other health care providers and (2) if section 364 does not apply, (a) the statute of limitations was equitably tolled, or (b) that rule should be only applied prospectively. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Alleged Veterinary Malpractice*

Plaintiff Shawnee Scharer was the owner of a mare named Cashmere, a show horse. In December 2007 plaintiff elected to have her horse's ovaries surgically removed. For that purpose, she presented the horse on December 11, 2007, to Dr. Barrie Grant at SLREH. The horse was returned to plaintiff on December 20, 2007. The horse's medical condition deteriorated beginning around December 26, 2007. During the month of January 2008, the horse was seen on several occasions at SLREH, but did not improve. The horse was euthanized on February 2, 2008.

### B. *The Complaint*

On February 19, 2009, over one year after the death of her horse, Scharer filed this action. The original complaint, filed using a Judicial Council pleading form, asserted a single claim for damages for professional negligence, jointly against all of the defendants. It incorporated, as an exhibit, a copy of a letter dated November 20, 2008, announcing plaintiff's intention to sue, pursuant to section 364.

Scharer filed a first amended complaint, alleging veterinary malpractice and other claims arising from the alleged professional negligence of defendants.

### C. *Motion for Judgment on the Pleadings/Motions for Summary Judgment*

SLREH brought a motion for judgment on the pleadings on the basis that (1) the first amended complaint was barred by the one-year statute of limitations contained in section 340, subdivision (c), and (2) the complaint could not be amended to overcome the statute of limitations because, among other things, the section 364 prelawsuit notice of intent to sue requirement for claims of professional negligence was for personal injury and wrongful death, not for property damage, and thus did not extend the statute of limitations.

Scharer opposed the motion, asserting (1) section 364 should apply to veterinarians and (2) she could amend her complaint under section 351 by pleading the individual defendants were absent from the State of California

for more than the 17 days by which she missed the deadline to file her complaint.

The court granted the motion based upon the running of the statute of limitations. The court found that because Scharer's claims for injury or death to an animal were claims for property damage, section 364 did not apply to require a prelawsuit notice of intent to sue and did not extend the one-year limitations period of section 340, subdivision (c). The court granted Scharer 10 days' leave to amend to plead facts triggering the tolling provisions of section 351.

Scharer thereafter filed a second amended complaint (the operative pleading), adding allegations that the individual defendants were outside the State of California between February 2, 2008, and February 19, 2009.

All defendants thereafter filed motions for summary judgment based upon the statute of limitations. Because the court had already ruled against Scharer on the statute of limitations issue, Scharer argued she should be allowed to amend her complaint to allege the statute of limitations should be tolled on the basis she did not discover defendants' alleged negligence until March 2008.

The court issued a tentative ruling, finding that (1) Scharer's complaint was barred by the statute of limitations and (2) her request for leave to amend her complaint to allege facts supporting a "discovery rule" tolling was untimely because she failed to raise the issue until her opposition to the motions for summary judgment.[1]

After the court issued its tentative ruling, Scharer filed a supplemental brief asserting again that she should be allowed to amend her complaint to allege facts supporting a discovery rule tolling, and also that the statute of limitations should be equitably tolled.

Following oral argument, the court confirmed its tentative ruling and entered judgment in defendants' favor.

DISCUSSION

I. *STANDARD OF REVIEW*

The standard of review of an order granting summary judgment is well established. Our review is de novo. (*Guz v. Bechtel National, Inc.* (2000) 24

---

[1] On appeal, Scharer does not challenge the court's refusal to allow an amendment to the complaint to allege delayed discovery of the alleged veterinary malpractice.

Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) We independently review the entire record, except as to evidence to which objections were timely made and sustained, in the same manner as the trial court. (*Ibid.*) First, we review the issues framed by the operative pleadings to determine the scope of material issues. We then determine if the moving party has discharged its initial movant's burden of production. If we determine the moving party made the requisite prima facie showing of the nonexistence of a triable issue of fact, we then review the opposing party's submissions to determine if a material triable issue exists. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Todd v. Dow* (1993) 19 Cal.App.4th 253, 258 [23 Cal.Rptr.2d 490].) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing [defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzer v Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143]; accord, *Aguilar, supra*, 25 Cal.4th at p. 843.) "The trial judge's stated reason for granting summary judgment is not binding on us because we review its ruling, not its rationale." (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1074 [85 Cal.Rptr.2d 627].)

## II. ANALYSIS

### A. The Statute of Limitations in Section 340, Subdivision (c) Applies to Scharer's Claims

The statute of limitations applicable to claims for veterinary malpractice is contained in section 340, subdivision (c), which provides in part: "Within *one year* [a plaintiff must commence]: [¶] . . . [¶] (c) An action . . . against any person who boards or feeds an animal or fowl *or who engages in the practice of veterinary medicine* as defined in Section 4826 of the Business and Professions Code, *for that person's neglect resulting in injury or death to an animal* or fowl in the course of boarding or feeding the animal or fowl *or in the course of the practice of veterinary medicine on that animal* or fowl." (Italics added.)

Scharer's horse died on February 2, 2008. That date established the time the statute of limitations began to run, requiring the complaint to be filed no later than February 2, 2009. However, Scharer did not file her complaint until February 19, 2009. Thus, unless the statute of limitations was tolled, the

complaint is time-barred. As we shall explain, *post*, there is no tolling provision that saves Scharer's claims.

B. *The Tolling Provisions of Section 364 Do Not Apply to Scharer's Claims*

Section 364 was enacted as part of MICRA, the Medical Injury Compensation Reform Act, in 1975. (*Bennett v. Shahhal* (1999) 75 Cal.App.4th 384, 389 [89 Cal.Rptr.2d 272].) The statute requires 90 days' advance notice to be given prior to filing suit against "health care provider[s]" in certain "professional negligence" cases. (§ 364, subd. (a).) In cases where section 364 applies, if there are less than 90 days remaining before expiration of the statute of limitations, the notice operates to extend the statute for an additional 90 days. The relevant portions of section 364 provide as follows: "(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action. [¶] . . . [¶] (d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice. [¶] . . . [¶] (f) For the purposes of this section: [¶] (1) 'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code . . . ; [¶] (2) 'Professional negligence' means negligent act or omission to act by a health care provider in the rendering of professional services, *which act or omission is the proximate cause of a personal injury or wrongful death*, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Italics added.)

Veterinarians, who are licensed and regulated pursuant to chapter 11 of division 2 of the Business and Professions Code (see Bus. & Prof. Code, § 4800 et seq.), do fall within the definition of "health care provider" contained in Code of Civil Procedure section 364, subdivision (f)(1). However, actions seeking damages from veterinarians for alleged injury or death to an animal are *not* actions for "professional negligence" as the Legislature has defined that term, in section 364, subdivision (f)(2), because that definition applies only to a health care provider's negligence that results in "a personal injury or wrongful death." Actions for veterinary malpractice, however, seek damages for *property damage* because animals are a form of personal property under California law. (See *Roos v. Loeser* (1919) 41 Cal.App. 782 [183 P. 204]; *Di Guilio v. Rice* (1937) 27 Cal.App.2d Supp. 775, 781 [70 P.2d 717] ["The word 'chattels' includes animate property [citation];

and has been held to be applicable to dogs."]; *People v. Fimbres* (1930) 107 Cal.App. Supp. 778, 780 [288 P. 19] ["A dog is regarded in this state as property . . . ."]; Pen. Code, § 491 ["Dogs are personal property, and their value is to be ascertained in the same manner as the value of other property."]; *Wells v. Brown* (1950) 97 Cal.App.2d 361, 365 [217 P.2d 995] [value of dog established by fair market value].)

██ A claim for professional negligence against a veterinarian is thus a claim for property damage and not a claim for "personal injury" or "wrongful death." Because Scharer's claims in this case were for property damage and not for "personal injury" or "wrongful death," those claims do not fall within the meaning of "professional negligence" under the plain language of section 364.

*Vazquez de Mercado v. Superior Court* (2007) 148 Cal.App.4th 711 [55 Cal.Rptr.3d 889] (*de Mercado*) is instructive. There, the issue was whether, and when, claims against veterinarians fall within the definition of "professional negligence" adopted in many of the statutes enacted as part of MICRA. The veterinarian in that case was not alleged to have injured an animal, as is claimed here. Rather, he had performed a prepurchase examination of a horse that the plaintiffs were considering purchasing. He was alleged to have misstated the horse's physical condition following that examination and to have failed to reveal medical problems that would have made the horse undesirable for purchase. (*de Mercado*, at pp. 713–714.)

The veterinarian demurred based on the statute of limitations and filed a motion to strike the plaintiffs' claims for punitive damages pursuant to another MICRA provision, section 425.13, that requires a court order before making a claim for professional negligence against a health care provider. (*de Mercado, supra*, 148 Cal.App.4th at p. 714.) The trial court overruled the demurrer and denied the motion to strike on the grounds the complaint was not for professional negligence as the veterinarian's alleged wrongful acts had not caused personal injury or wrongful death to the plaintiffs. (*Ibid.*)

The veterinarian filed a petition for writ of mandate, which the Court of Appeal denied. In doing so, the *de Mercado* court held that the veterinarian was not entitled to assert the protections of MICRA, because "professional negligence" is defined in the MICRA statutes as "a 'negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a *personal injury or wrongful death* . . . .' " (*de Mercado, supra*, 148 Cal.App.4th at p. 715, italics added.) The Court of Appeal explained that, as here, the plaintiffs were only seeking damages for economic loss, not personal injury or wrongful death: "Plaintiffs seek damages for the purchase price of the horse and costs of its care. There

is no allegation of a wrongful death. And the alleged economic loss to plaintiffs is not a personal injury. ' " ' "*An injury is personal when it impairs the well-being or the mental or physical health of the victim.*" ' [Citations.]" [Citation.]' [Citation.] Plaintiffs did not suffer personal injuries or wrongful death. [¶] The language defining 'professional negligence' as limited to personal injury or wrongful death is clear and unambiguous." (*Ibid.*, italics added.)

The *de Mercado* court emphasized that the nature of the injury must be determined by its effect on the *parties*, i.e., on the effects suffered by the plaintiffs themselves and not by the horse or other animal: "We reject defendant's argument that plaintiffs' economic injuries are 'personal' to them and that the action thus falls within the statute. There is no basis to read the plain language of the statute in that fashion. We need not decide his claim that, because personal injury or wrongful death only applies to humans, veterinarians will never fall within the statute. . . . We can conceive of situations where an animal's owner could experience personal injury based on a veterinarian's professional negligence. That this might not be the norm or occur with frequency does not lead to the conclusion that the statute defining professional negligence should be interpreted any more broadly than its plain language." (*de Mercado, supra*, 148 Cal.App.4th at p. 716.)

Here, as in *de Mercado*, there is no allegation that Scharer suffered personal injury or wrongful death. Rather, she is only seeking economic damages for the death of her horse. As with the MICRA provisions at issue in *de Mercado*, section 364 defines "professional negligence" as an act or omission that causes "personal injury" or "wrongful death" to the plaintiff.

In support of her claim that section 364 should be applied to veterinarian malpractice cases, Scharer cites *Williamson v. Prida* (1999) 75 Cal.App.4th 1417 [89 Cal.Rptr.2d 868]. However, that case involved the *standard of care* applicable to veterinarians, holding that it is the same as in medical malpractice cases. (*Id.* at p. 1425.) There is one sentence that is dicta that states, "[V]eterinary malpractice cases are treated like medical malpractice cases for the purpose of statute of limitations." (*Ibid.*) However, that case did not discuss the separate and distinct statute of limitations applicable to veterinarians in section 340, nor the tolling provisions of section 364. (*Williamson*, at p. 1425.) Thus, the *Williamson* case has no application here, and, to the extent that one sentence could be read to support Scharer's position, we respectfully disagree with it.

### C. *Equitable Tolling Does Not Apply*

"It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims . . . . '[T]he right to be free of stale

claims in time comes to prevail over the right to prosecute them.' [Citations.] . . . However, courts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, *possessing several legal remedies* he [or she], reasonably and in good faith, *pursues one* designed to lessen the extent of his [or her] injuries or damage." (*Addison v. State of California* (1978) 21 Cal.3d 313, 317 [146 Cal.Rptr. 224, 578 P.2d 941], italics added.) As examples, *Addison* cited cases where plaintiffs sought relief in another forum or through a different form of action than was being asserted in the potentially time-barred second action: a timely workers' compensation claim tolls the statute of limitations on a related suit for damages for the same injury (*Elkins v. Derby* (1974) 12 Cal.3d 410, 412 [115 Cal.Rptr. 641, 525 P.2d 81]), and the statute of limitations on a second suit is tolled where the plaintiff refiles promptly following the erroneous dismissal of a first suit (*Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d 399, 411 [154 P.2d 399]). (*Addison, supra,* 21 Cal.3d at p. 318.)

■ By contrast, equitable tolling is *not* available in cases where the original complaint is defective. For instance, in *Hu v. Silgan Containers Corp.* (1999) 70 Cal.App.4th 1261 [83 Cal.Rptr.2d 333], the plaintiff filed an action for alleged discrimination against her employer shortly before the expiration of the statute of limitations, but failed to pay the required filing fee to the court. On a date after the statute of limitations expired, the court clerk voided the filing based on the nonpayment of fees. The plaintiff thereafter paid the filing fee and late charges and obtained an order "retroactively reinstating" her complaint. (*Id.* at p. 1264.) The employer moved for judgment on the pleadings, arguing that the statute of limitations barred Hu's claims and that the trial court has no jurisdiction to "reinstate" an action that had been voided for failure to pay required fees. The trial judge granted the motion, finding that once the court properly voided the plaintiff's complaint, the only way the plaintiff could pursue her discrimination claims was by filing a new action, but the one-year statute of limitations ran three months before the court voided the plaintiff's complaint. (*Hu, supra,* 70 Cal.App.4th at pp. 1264–1265.)

The Court of Appeal affirmed the judgment, rejecting the plaintiff's argument that her timely original submission of the complaint without fees should be deemed sufficient to invoke the doctrine of equitable tolling: "The two parties disagree over what prerequisites the equitable tolling doctrine requires. Hu claims a plaintiff need show only (1) notice to defendant; (2) lack of prejudice to defendant; and (3) reasonable good faith conduct on the part of the plaintiff. However, Hu finds support for this formulation in a series of cases which consider equitable tolling in a far different context from the present case. [¶] In the majority of cases in which courts apply the equitable tolling doctrine, the plaintiff possesses *several legal remedies,* and reasonably and in good faith pursues one designed to lessen the extent of his or her injuries or damage. In these cases, if the defendant is not prejudiced, the

running of the limitations period is tolled *as to the other available remedies.* [Citations.] These are the cases from which Hu extracts her requirements for equitable tolling. [¶] However, in this case we consider a request for equitable tolling, not based on Hu's pursuit of one legal theory over another, but based on what Hu terms a 'defective first action.' . . . [¶] . . . [¶] . . . Hu makes *no claim of error on the part of the court, nor does she assert any delay or dilatory tactics on the part of* [*defendant*]. The only element of equitable tolling Hu addresses is her good faith efforts to rectify her nonpayment of fees. We find Hu unable to allege the elements required to equitably toll the statute of limitations." (*Hu v. Silgan Containers Corp., supra,* 70 Cal.App.4th at pp. 1270–1271, italics added.)

Scharer is in a position similar to that of the plaintiff in *Hu* and like that plaintiff can only point to her claimed diligence in pursuing defendants. Scharer did not seek one of "several legal remedies" prior to filing suit against defendants. Section 364 is not a *remedy.* Rather, it is a *prerequisite* to seeking remedies that are not applicable to this case. As in *Hu,* Scharer's good faith intentions are the only element of equitable tolling present in this case. A plaintiff must pursue a claim in a timely manner or demonstrate that he or she was prevented from doing so by improper action of the court or the defendants. Scharer cannot allege such facts in this case, and thus may not invoke the doctrine of equitable tolling.

### D. *Our Holding Is Not a "New Rule" That Can Be Applied Prospectively*

■ Judicial decisions, especially those in tort cases, are generally applied retroactively. (*Woods v. Young* (1991) 53 Cal.3d 315, 330 [279 Cal.Rptr. 613, 807 P.2d 455].) However, reliance by plaintiffs on a former rule and the unforeseeability of change may support prospective application of a ruling. (*Ibid.*)

That situation is not present in this case. Section 364 has *never* applied to veterinary malpractice for injury to or death of an animal, either by its terms or by any judicial decisions. The court's ruling that section 364 does not apply to veterinary malpractice is not a procedural change or new rule because it did not change section 364 or its application. The definition of "professional negligence" in section 364 is clear and is limited to claims for "personal injury or wrongful death." The definition has never included claims for property damage. There was no former rule in existence that Scharer reasonably could have relied on to her detriment and no new rule that affects her rights now.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

McConnell, P. J., and Huffman, J., concurred.