Filed 6/24/13 (unmodifed opn. and 5/29/31 pub. order attached)
**CERTIFIED FOR PUBLICATION**


# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Butte)

----


| | |
|---|---|
| MICHAEL FULLER et al., | C070452 |
| Plaintiffs and Appellants, | (Super. Ct. No. 152324) |
| v. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| FIRST FRANKLIN FINANCIAL CORPORATION et al., | |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |


THE COURT:

The nonpublished opinion in the above-entitled matter filed on May 1, 2013, was ordered certified for publication in the Official Reports on May 29, 2013. For good cause it now appears that the opinion should be modified in the following particulars and it is so ordered.

1.     On page 13 of the slip opinion, second full paragraph that begins "First Franklin contends", omit the last three sentences of the paragraph (e.g., beginning with "All three of these arguments entirely . . . " and ending with "We therefore reject these grounds

1

. . . .") and replace them with the following, including at the end of the last sentence a new, final footnote 8:

> This is true with respect to plaintiffs' theories of negligence and breach of fiduciary duty. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514 [party to contract cannot be liable for conspiring to interfere with it because no duty to refrain from interference]; *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44 [noninsurer defendants cannot be liable for conspiring to breach duty of good faith because that duty is owed only by insurer]; *Chavers v. Gatke Corp.* (2003) 107 Cal.App.4th 606, 614 [no duty to plaintiffs, so defendant cannot be liable under a conspiracy theory for negligence or strict liability]; *Everest Investors 8 v. Whitehall Real Estate Limited Partnership XI* (2002) 100 Cal.App.4th 1102, 1107 [no conspiracy liability where no fiduciary duty owed to plaintiff].)
>
> However, all three of these arguments entirely disregard the allegations that First Franklin *conspired* with SMF—plaintiffs' broker—to *deceive* plaintiffs. As a federal trial court has noted in distinguishing the principle derived from these cases, "*everyone* owes a duty not to commit an intentional tort against *anyone*." (*Qwest Communs. Corp. v. Weisz* (S.D. Cal. 2003) 278 F.Supp.2d 1188, 1193, fn. 4 [conspiracy liability proper for defrauding creditor].) Thus, there can be liability for conspiring to commit an intentional tort even *absent* any duty. (*Kesmodel v. Rand* (2004) 119 Cal.App.4th 1128, 1141 [false arrest/imprisonment]; *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 84 [duty to refrain from injuring plaintiff through express misrepresentations].) Indeed, in *Chavers*, the defendant did not challenge an instruction on a theory of conspiracy with respect to theories of concealment and intentional misrepresentation. (See *Chavers v. Gatke Corp.*, *supra*, 107 Cal.App.4th at p. 611.) Thus, under this theory, First Franklin can be liable for SMF's intentionally tortious conduct. We therefore reject these grounds for sustaining the demurrer as to the theory of deceit.[8]

_____

[8] Because a demurrer lies only as to an *entire* complaint or a count (5 Witkin, *supra*, Pleading, § 957, p. 371), and we have upheld First Franklin's liability to plaintiffs on a conspiracy theory for deceit, we do not need to consider First Franklin's arguments in its petition for rehearing regarding vicarious liability on an agency theory.

2.      On page 14 of the slip opinion, in the first sentence of the Disposition, after the words "First Franklin" insert the following parenthetical:  "(as to the counts of deceit and UCL violations)" so that the sentence now reads:

> The judgments of dismissal are reversed with directions to enter orders overruling the demurrers of First Franklin (as to the counts of deceit and UCL violations) and SFM.

The petition for rehearing of respondents First Franklin Financial Corporation and Bank of America is denied.  There is no change in judgment.  *(CERTIFIED FOR PUBLICATION.)*

FOR THE COURT:


        ROBIE        , Acting P. J.


        BUTZ        , J.


        DUARTE        , J.

Filed 5/1/13  Certified for publication 5/29/13 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Butte)

----

| | |
|---|---|
| MICHAEL FULLER et al., | C070452 |
| Plaintiffs and Appellants, | (Super. Ct. No. 152324) |
| v. | |
| FIRST FRANKLIN FINANCIAL CORPORATION et al., | |
| Defendants and Respondents. | |

Plaintiffs Michael Fuller and Karen Gehrig, a married couple living in Oroville, initiated this action in November 2010 against First Franklin Financial Corporation (First Franklin), Bank of America, and Sacramento First Mortgage (SFM).[1]  SFM was plaintiffs' loan broker, First Franklin was the original lender funding the purchase of their home in

---

[1]  Another original defendant, Mortgage Electronic Registration Systems, Inc., is not a party to the action any longer.

1

June 2006, and Bank of America is First Franklin's successor in interest on the loan.[2]  In their fourth effort at stating a cause of action, under direction from the trial court "to provide further allegations of late discovery of the [actionable] facts," plaintiffs alleged defendants First Franklin and SFM, pursuant to a scheme of predatory lending, made material misrepresentations and fraudulent concealments of circumstances in the appraisal of the residence and in the terms of the loan in order to maximize their profit, which the plaintiffs did not discover until late 2009.  Plaintiffs listed several counts (inexactly denominated "causes of action" (see *Cullen v. Corwin* (2012) 206 Cal.App.4th 1074, 1076, fn. 1)) that included theories of deceit, negligence, unfair business practices, and SFM's breach of its fiduciary duty to them, and civil conspiracy (which is not an independent cause of action in any event but only a theory for establishing vicarious liability (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 557(1), p. 706 (Witkin)).

First Franklin and SFM separately demurred.  Basing its January 2012 rulings on the statute of limitations, the trial court issued an order of dismissal in favor of First Franklin, and an order sustaining SFM's demurrer as to *all* causes of action without leave to amend.

Plaintiffs filed notices of appeal from the two orders.  SFM subsequently moved for judgment on the pleadings on the count of negligence.[3]  The trial court granted the motion for lack of opposition, and entered a judgment of dismissal as to SFM in June

---

[2]  The allegations assert that Bank of America is named as a defendant (including its status as a coconspirator with the other two defendants) not on the basis of any conduct of its own but strictly on the basis of its status as First Franklin's successor in interest.  We thus will not expressly refer to Bank of America in this opinion.

[3]  This was a superfluous action.  Even though SFM had not included the count of negligence in its demurrer to this pleading (or the prior one), it is premised on the same factual basis as the other counts and the trial court could properly include it in its ruling on SFM's demurrer.  (5 Witkin, *supra*, Pleading, § 955, p. 370.)

2012.  We deem the premature notice of appeal from the trial court's order sustaining SFM's demurrer to have been filed immediately after the subsequently entered judgment for SFM. (Cal. Rules of Court, rule 8.308(c); see *In re Gray* (2009) 179 Cal.App.4th 1189, 1197 [this court discusses equities in favor of deeming notice to be "premature" once record prepared and briefing completed after entry of judgment].)

Plaintiffs argue that they had sufficiently alleged delayed discovery of facts that defendants had purposely withheld from them in order to induce them to enter into the now defaulted loans.  We agree.  We shall thus reverse the judgments of dismissal with directions to overrule the demurrers.

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

### A.  The Pleading at Issue

In an appeal from a judgment resulting from the sustaining of a demurrer without leave to amend, we assume the truth of well-pleaded factual allegations in the subject pleading, shorn of any legal conclusions.  (*Fogarty v. City of Chico* (2007) 148 Cal.App.4th 537, 540 (*Fogarty*).)

Dennis Graves was an employee of SFM and purported to be a mortgage broker, but was in fact not licensed as a broker in California.  SFM and its broker (Graves) were both agents of First Franklin, which comprehensively directed their conduct.  First Franklin and SFM solicited the business of plaintiffs, who met with the ostensible broker at a real estate seminar.  This resulted in plaintiffs applying for a residential home loan with SFM.  They wanted a 30-year fixed-rate mortgage.

The broker hired an appraiser to value the property that plaintiffs wanted to buy. Pursuant to a common scheme with First Franklin and SFM, the appraiser chose outdated sales of homes that were not truly comparable in value (having greater square footage, more rooms, and other added amenities), resulting in a significantly inflated appraisal of the subject property of which defendants were aware.

3

The broker told plaintiffs that they did not qualify for any loan with better terms than the one he then offered them. He did not discuss that the terms of the $435,000 loan included a first mortgage (carrying a 30-year amortization) with an adjustable interest rate and with payments limited to interest for the first three years, and a second mortgage (carrying a 20-year amortization and a balloon payment) with a fixed rate of 9.5 percent. He did not explain any consequences of the terms of the loans.

In truth, plaintiffs had credit scores that qualified them for more favorable loans, but the broker did not inform them of this in order to receive a hidden kickback from First Franklin as part of the closing costs of the loan. As a result, plaintiffs were unaware of their qualification for more favorable loans, the actual terms of the loan into which they entered in June 2006 (and the risk of foreclosure that the terms caused), or the actual value of their home. This stemmed from their status as first-time buyers who were not experienced in real estate transactions, and defendants were aware of their naïveté. Because defendants presented themselves as experts, plaintiffs relied on them. SFM and First Franklin concealed the specified information in order to induce plaintiffs to enter into the First Franklin loan, and plaintiffs would not have done so if they had been aware of the true facts. At the June 2006 closing, they "had a few questions about the prepayment penalty and other [unspecified] details," but the broker was not present and the notary did not have any answers for them.

In November 2009, the business plaintiffs owned was experiencing a "massive" diminution in earnings, so they sought to discuss a modification of their loans with First Franklin. This is when they first learned of the actual terms of the two loans. First Franklin initially refused to consider any modification. Plaintiffs had believed that they would be able to refinance the mortgage if they had difficulties with payments—based on a representation from SFM to this effect, in accordance with First Franklin's directives—but the absence of any real equity in the home precluded them from doing so. They were

4

also unable to negotiate a refinancing with another bank, which had their home appraised in November 2009, and then sought a "short" refinance (i.e., a reduction in the principal amount of the loan to reflect the present value of the property) with First Franklin, which failed to cooperate. First Franklin eventually agreed to grant a forbearance under which plaintiffs could make reduced payments of 50 percent for six months in mid-2010. After the end of that payment holiday, both plaintiffs eventually ceased making any payments on the loans in the fall of 2010.

Plaintiffs consulted with counsel at that point, and first learned (in an unspecified manner) of the inflated nature of their original appraisal (which is somewhat at odds with their allegation that the November 2009 appraisal had revealed their lack of equity in the home). They also first learned of the reputation of First Franklin as the largest provider of loans to unqualified borrowers, and marketer of these subprime loans to investors. Pursuant to its business scheme, First Franklin ignored standard underwriting protocols—creating a high risk that plaintiffs and many others would face foreclosure under the loans and inflated home appraisals—in order to maximize its market share of loans, deflecting any risk to itself by selling off these so-called subprime mortgages to investors.

### B. Procedural Route to Dismissal

Defendants filed challenges to the original complaint. The record does not contain any rulings on them (First Franklin asserting in its briefing that the filing of an amended pleading "moot[ed]" them). SFM filed a motion to strike and a demurrer (on grounds other than the limitations period). The trial court struck prayers for legal fees and punitive damages and sustained the demurrer with leave to amend. Plaintiffs filed an amended pleading before the hearing on First Franklin's demurrer, apparently mooting it.

In response to the filing of this pleading, SFM and First Franklin both filed motions to strike prayers for punitive damages and legal fees. SFM apparently demurred on grounds other than the statute of limitations; First Franklin included that as a basis.

5

The trial court issued a lengthy order. It overruled SFM's demurrer to all causes of action (which did not include the count of negligence). The court found that the overstatement of the appraisal value, the concealment of plaintiffs' eligibility for more favorable loans, and the hidden kickbacks paid to SFM stated a claim against SFM for deceit, that this conduct (along with the failure to explain the terms of the loans to plaintiffs) stated a claim against SFM for breach of fiduciary duty, and that this conduct also stated a claim against SFM for unfair business practices. However, the court sustained First Franklin's demurrer on the ground of the statute of limitations, finding plaintiffs had failed to establish with adequate specificity their assertion of reasonably delayed discovery of the facts supporting their claims against the financial institutions. (The trial court thus did not discuss the substantive sufficiency of the allegations against First Franklin.) It granted SMF's motion to strike the prayer for legal fees, but denied it as to the prayer for punitive damages.

In sustaining the demurrers to the present pleading that asserted the expiration of the limitations period (First Franklin also asserting other grounds), the trial court adopted its tentative decision in the absence of a request for oral argument. The court did not elaborate on its underlying reasoning in ruling that the statute of limitations was a bar.

## DISCUSSION

### I. General Principles

We review an order sustaining a demurrer de novo. (*Fogarty*, *supra*, 148 Cal.App.4th at p. 542.) A complaint disclosing on its face that the limitations period has expired in connection with one or more counts is subject to demurrer. (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 833.) Under the discovery rule, which delays accrual of a cause of action until a party discovers or has reason to discover the cause of action (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192 (*Aryeh*)), if the party has notice of facts that would put a reasonable person on inquiry, or

6

has the reasonable opportunity to obtain information from sources open to investigation, the limitations period begins to run (*Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 902 (*Boatwright*).  If a demurrer demonstrates that a pleading is untimely on its face, it becomes the plaintiff's burden "even at the pleading stage" to establish an exception to the limitations period.  (*Aryeh*, *supra*, 55 Cal.4th at p. 1197.) One of these is the doctrine of fraudulent concealment, which tolls the statute of limitations if a defendant's deceptive conduct "has caused a claim to grow stale."  (*Id*. at p. 1192; *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 533.)  In support of this doctrine, a plaintiff must allege the supporting facts—i.e., the date of discovery, the manner of discovery, and the justification for the failure to discover the fraud earlier—with the same particularity as with a cause of action for fraud. (*Boatwright*, *supra*, 124 Cal.App.3d at pp. 900-902.)

It is the plaintiff's burden on appeal to show in what manner it would be possible to amend a complaint to change the legal effect of the pleading; we otherwise presume the pleading has stated its allegations as favorably as possible.  (*Boatwright*, *supra*, 124 Cal.App.3d at pp. 900-902; *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; Code. Civ. Proc., § 472c.[4])  At this stage in the proceedings, we are concerned only with whether a plaintiff has stated a hypothetical case; whether or not it can be proven is beyond our review.  (*Aryeh*, *supra*, 55 Cal.4th at p. 1202 [plaintiff is "master" of complaint, and court must accept allegations "at face value"]; *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262, 1267.)

The limitations period for a cause of action under the unfair competition law (UCL) is four years.  (Bus. & Prof. Code, §§ 17200, 17208; see *Burger v. Kuimelis*

---

[4]  Undesignated statutory references are to the Code of Civil Procedure.

7

(N.D. Cal. 2004) 325 F.Supp.2d 1026, 1045.)[5] The limitations period is three years for a cause of action for deceit (§ 338, subd. (d); *Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 219), as it is for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit, rather than the catchall four-year limitations period that would otherwise apply (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606-607).[6] Finally, a cause of action for negligence in the form of a failure to meet a standard of reasonable care on the part of a real estate broker is two years. (198 Cal.App.4th at p. 606; § 339.) The allegation of a conspiracy in a civil action does not affect the limitations period for the substantive theory of liability involved. (*Maheu v. CBS, Inc.* (1988) 201 Cal.App.3d 662, 673.)

## II. Statute of Limitations

To recap: In connection with plaintiffs' purchase of their home in June 2006, SFM, acting at the direction of First Franklin, procured an artificially inflated appraisal that used stale sales of properties that were not truly comparable. Neither SFM nor First Franklin disclosed this fact to plaintiffs. Although plaintiffs thus lacked any true equity in their home even at the time of purchase, SFM represented that plaintiffs would be able to refinance their mortgage terms if they had difficulties making payments in the future,

---

[5] First Franklin asserts that this four-year limitations period is not subject to the common law rule of fraudulent concealment, citing *Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 891. However, that case (and others like it) relied on the opinion of a federal trial court that the California Supreme Court has found to have misread California law; disapproving the reasoning, it concluded to the contrary that "the UCL is governed by common law accrual rules to the same extent as any other statute" if appropriate to the underlying nature of the UCL claim. (*Aryeh*, *supra*, 55 Cal.4th at pp. 1194, 1196.)

[6] This may be the basis for the holding in the case SFM cites, *UMET Trust v. Santa Monica Medical Investment Co.* (1983) 140 Cal.App.3d 864, 872-873, 874, which does not explain its application of a three-year limitations period to a breach of a broker's fiduciary duty beyond a citation to section 338.

which would not in fact be true unless the actual value of the residence increased enough to exceed the outstanding principal on the mortgage. SMF also falsely represented to plaintiffs that the loans it offered to them were the only ones for which they could qualify, and falsely concealed other more favorable loans for which plaintiffs in fact qualified. Neither SFM nor First Franklin disclosed these true facts to plaintiffs. SMF and First Franklin also failed to disclose that the closing costs of the mortgage chargeable to plaintiffs included an illegal kickback from First Franklin to SMF for its securing plaintiffs as First Franklin's customers on the unfavorable terms of the First Franklin loans. SMF and First Franklin were aware that plaintiffs were unsophisticated first-time home buyers, but failed to explain the structure of the combined loans or the risk to plaintiffs of foreclosure that these terms posed (e.g., the risk of increased payments from an adjustable rate, the failure to acquire any equity as a result of interest-only payments, the risk in facing a balloon payment) in their dealings as real estate professionals with plaintiffs. Only in late 2009, when a severe reduction in their income first impelled them to seek relief from First Franklin, were plaintiffs put on the path leading them to file their complaint a year later (well within any of the pertinent limitations periods) for the misrepresentations that induced them to enter into the unfavorable loans and left them at risk of foreclosure.

Noting that all of these misrepresentations and concealments predated the June 2006 purchase (the point at which plaintiffs began to incur damages as a result), SFM and First Franklin assert even the longest of the pertinent limitations periods had expired as of the filing of the November 2010 original pleading. Based merely on the plaintiffs' allegation that they had a question about a provision for a prepayment penalty at closing, defendants argue this question was enough to indicate plaintiffs had inquiry (if not actual) notice of the web of deceit enveloping the transaction. SMF separately argues that plaintiffs' receipt of a copy of the appraisal at closing was sufficient to put them on notice

9

of the misrepresentations contained in it because "the appraisal details all this information" (an assertion made necessarily in abstract about a document that is neither appended to the pleading nor incorporated in it by reference), and also asserts plaintiffs could have obtained their own appraisal at the time (see *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1099 (*Nymark*) ).[7]

Although ordinarily a party to a contract cannot justifiably claim unawareness of the express provisions of the contract (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 423-424; see *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183-1184, fn. 11), this is not the basis of plaintiffs' causes of action. It is the failure of SMF, a mortgage broker which owed them a fiduciary duty, to explain the possibility that the terms of the loans might increase the risk of foreclosure. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 783-784 [duty can extend beyond mere disclosure of written terms, requiring mortgage broker to counsel about true rate of interest, penalties, and swollen size of balloon payment that were all unfavorable terms]; *Paper Savers, Inc. v. Nacsa* (1996) 51 Cal.App.4th 1090, 1103-1104 [issue of reasonability of reliance on agent is "complex" and ordinarily must be determined as question of fact on particular circumstances].) The same is true of the appraisal. That plaintiffs were aware of the contents of the appraisal does not of itself provide any notice to first-time buyers that the appraisal's bases were improper (or alert

---

[7] SMF also separately argues that its representations regarding plaintiffs' ability to get a refinancing of the loan (despite the overvaluation in the appraisal) were mere opinions regarding the future appraisals of the property and therefore were not actionable. However, the opinions of those who have special expertise can be actionable; this is ordinarily a question of fact (*Furla v. Jon Douglas Co.* (1998) 65 Cal.App.4th 1069, 1080-1081; *Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1474-1475) and therefore not subject to demurrer unless the allegations are capable of only one interpretation. The present allegations do not negate plaintiffs' reliance as first-time buyers on their mortgage broker's representations regarding loan refinancing (and failure to disclose the overvaluation of their property in the appraisal) as a matter of law.

them to the right or need to conduct their own appraisal) where their broker does not discuss these issues with them. (*Arthur L. Sachs*, *Inc. v. City of Oceanside* (1984) 151 Cal.App.3d 315, 323-324 [not unreasonable as matter of law to rely on fraudulent appraisal where party does not have expertise, other party has superior knowledge, and nothing facially alerts party to need for independent evaluation].) That plaintiffs had questions about the unrelated prepayment penalty provision (which may have been a function of their particular interest in the availability of refinancing) or other unspecified questions does not establish—at least in the context of a demurrer—that they actually or should have had suspicions regarding the adjustable nature of the interest rate (or the rate itself), the amortization period, the balloon payment, the interest-only payments, their ability to refinance the loan, or the transaction as a whole.

Nor, for that matter, do defendants explain how an inexperienced buyer should have been aware of the relationship between a credit score and the terms of loans absent disclosures from the broker to this effect, or been able to investigate *on their own* exactly what loans terms *were* available to them with their score, given the representation from their broker that the loan presented to them had the best terms available. Finally, SMF and First Franklin simply overlook the failure to disclose a hidden kickback in the closing costs that increased plaintiffs' payment, let alone explain why it was unreasonable as a matter of law for plaintiffs to fail to uncover this extraction from them. In short, nothing in the circumstances surrounding the closing of the loan makes plaintiffs' unawareness of the true circumstances unreasonable.

Alternately, SFM and First Franklin make the conclusory assertion that even if plaintiffs had been reasonable in relying on information from a mortgage broker at the outset, they have failed to allege a reasonable basis for performing their obligations under the loans for over three years rather than earlier discovering the true facts about the transaction, because their attorney was able to discern the remainder of the true facts

11

promptly after they consulted with him. First Franklin adds a conclusory argument that the delay from November 2009 until the commencement of this action in November 2010 was unreasonable.

The fact that their *attorney* (a trained professional), rather than the inexperienced plaintiffs, was able to determine the true circumstances of the loan in short order does not have any bearing on the failure of *plaintiffs* to have had any qualms about the loans until financial ill winds first made the loans an issue of importance for them, impelling them to revisit the loans in the course of seeking a reduction in payments. Defendants do not point to any fact alleged in the complaint occurring between June 2006 and late 2009 representing any sort of "red flag" as a matter of law putting plaintiffs on notice that their home was overvalued for the amount of indebtedness, that their "best" loan was in fact more unfavorable than it needed to be, that their broker had siphoned off part of their closing costs, that they would not be able to seek to reduce their payments through refinancing, and that they would face foreclosure as a result. As for the delay between late 2009 and the commencement of this action, the pleading does not provide an exact timeline, but it does reveal unsuccessful negotiations with First Franklin, negotiations with a different lender with which First Franklin refused to cooperate, and then a period in mid-2009 during which First Franklin briefly accommodated plaintiffs by allowing reduced payments. We do not believe it was unreasonable as a matter of law for them to have initially explored these alternatives before seeking out an attorney for purposes of litigation.

As we emphasized at the outset, it may be that evidentiary facts will ultimately demonstrate the untimeliness of plaintiffs' delayed discovery, once plaintiffs' actual knowledge and expertise (and defendants' actual representations) come to light. But the allegations establish with adequate specificity nondisclosures and misrepresentations from a broker (acting as First Franklin's agent in this respect), and the absence of any

12

circumstances to trigger plaintiffs' reasonable inquiry into *available* facts revealing the true nature of the loans. We therefore conclude defendants have failed to establish the expiration of the limitations period on the face of the pleading, and we cannot sustain the demurrer on this basis as a result.

### III. Other First Franklin Claims

First Franklin also renews alternative grounds it had raised in the trial court as bases for its demurrer. (*Sui v. Price* (2011) 196 Cal.App.4th 933, 939 [must determine if any grounds asserted in demurrer will support ruling other than those on which trial court relied]; *B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959 [because demurrer raises only pure question of law, may consider even new theories on appeal].)

First Franklin contends "There are no specific allegations of any deceitful conduct by [First Franklin]. Rather, the only specific conduct alleged . . . was done by . . . an employee of [SFM]." It also asserts that it cannot be responsible for any nondisclosures to plaintiffs because it was not in a fiduciary relationship with them and did not have any obligation to disclose facts to them as a result. (*Long v. Walt Disney Co.* (2004) 116 Cal.App.4th 868, 874-875 [absent fiduciary relationship, there must be active prevention of the plaintiff's discovery, not mere nondisclosure of facts]; *Nymark*, *supra*, 231 Cal.App.3d at p. 1093, fn. 1 [*lender* not in fiduciary relationship with borrower].) In this vein, First Franklin claims it did not have any duty to plaintiffs on which they may premise negligence because it did not actively participate in the loan transaction beyond its role as a lender. All three of these arguments entirely disregard the allegations that First Franklin *conspired* with SMF—plaintiffs' broker—and that SMF was acting as First Franklin's agent in procuring the loans. Under either theory, First Franklin can be liable for SMF's negligence, misrepresentations, and nondisclosures. We therefore reject these grounds for sustaining the demurrer.

13

First Franklin also argues it cannot be vicariously liable for any UCL practices in which it did not directly participate (*Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952, 960), asserting the pleading does not contain allegations of any unfair, unlawful, or fraudulent conduct on First Franklin's part. As plaintiffs point out in response, this disregards the allegations that First Franklin acted pursuant to a business plan under which it obtained overvalued appraisals to make loans to otherwise unqualified borrowers in order to maximize the volume of loans available for sale to investors who would bear the resulting high risk of foreclosure (along with the borrowers). It also disregards the allegation that First Franklin agreed to remit an undisclosed kickback to SMF for securing the loan out of proceeds First Franklin received from plaintiffs. These also, contrary to First Franklin's conclusory invocation of the principle of specific pleading of UCL violations (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619), are sufficiently detailed allegations. We thus reject this ground for sustaining the demurrer as well.

## DISPOSITION

The judgments of dismissal are reversed with directions to enter orders overruling the demurrers of First Franklin and SFM. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                                                                          BUTZ            , J.


We concur:


          ROBIE            , Acting P. J.


          DUARTE           , J.

14

Filed 5/29/13

CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Butte)**

----

| | |
|---|---|
| MICHAEL FULLER et al., | C070452 |
| Plaintiffs and Appellants, | (Super. Ct. No. 152324) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| FIRST FRANKLIN FINANCIAL CORPORATION et al., | [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

APPEAL from judgments of dismissal of the Superior Court of Butte County, Sandra L. McLean, Judge. Reversed.

United Law Center, John S. Sargentis, Stephan J. Foondos and Janet S. Manrique for Plaintiffs and Appellants.

Wolfe & Wyman, Brian H. Gunn, W. Brian Jones and Marcus T. Brown for Defendants and Respondents First Franklin Financial Corporation and Bank of America.

Hansen, Kohls, Sommer & Jacob, Jason J. Sommer and Jeffrey J.A. Hinrichsen for Defendant and Respondent Sacramento First Mortgage.

1

THE COURT:

The opinion in the above-entitled matter filed on May 1, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in full in the Official Reports and it is so ordered. There is no change in judgment. *(CERTIFIED FOR PUBLICATION.)*


FOR THE COURT:


_____ROBIE_____, Acting P. J.


_____BUTZ_____, J.


_____DUARTE_____, J.

2