Filed 12/17/13  Arons v. Greenpoint Mortgage Funding CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STEVEN ARONS et al.,<br><br>          Plaintiffs and Appellants,<br><br>v.<br><br>GREENPOINT MORTGAGE FUNDING INC. et al.,<br><br>          Defendants and Respondents. | A135046<br><br>(Solano County<br>Super. Ct. No. FCS036780) |

After defaulting on their refinanced mortgage loan, Steven and Mary Arons sued their mortgage broker, the originating lender, and other financial entities.  While the broker sat on the sidelines, the lender and other defendants demurred to the Arons's first amended complaint.  The trial court sustained the demurrers without leave to amend and entered judgments of dismissal.  The Arons appeal.  We reverse, in limited part, as to the originating lender, Greenpoint Mortgage Funding Inc. (Greenpoint), and its alleged successor in interest, Capital One N.A. (Capital One).  Otherwise, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Arons owned residential property on Sunset Court in Fairfield, California.  In 2005, they desired to sell the property to obtain funds to purchase a different property.  They asked Success One Financial (Success One), a mortgage broker, if it could assist with the sale.  A Success One employee, Ernest Cunamay, convinced the Arons to keep the Sunset Court property, refinance it, and in that way obtain the money needed to

1

acquire the new property. Thus, on or about July 27, 2005, Mary Arons (but not Steven) entered into a $372,000, 40-year, adjustable rate mortgage, with Greenpoint as the lender. Five years later, in May 2010, a

notice of default was recorded, asserting Arons was more than $11,000 in arrears on loan payments.

In October 2010, the Arons filed suit and in March 2011, filed a first amended complaint (FAC) naming Success One, the broker, and Greenpoint, the original lender, as defendants. The Arons alleged an "agency agreement" between Success One and Greenpoint. They alleged Greenpoint authorized Success One and Cunamay to "represent and bind Greenpoint" in the refinance and were allowed "to represent to plaintiffs that the loan . . . was approved and would be issued by [Greenpoint]." Additionally, Greenpoint allegedly "directed and authorized the broker's conduct" by "directing the broker concerning what to tell plaintiffs and prospective borrowers to induce them to enter into" loans with Greenpoint. For instance, Greenpoint allegedly "directed the broker to inform plaintiffs that the subject loan was the 'best loan available,' that plaintiffs had the ability to repay the loan with their income and that plaintiffs could be refinanced." The Arons alleged Greenpoint's control was "comprehensive, immediate and day-to-day in that the bank directed the conduct of the broker through closing conditions, funding conditions and 'rate locks.' "

The Arons also sued numerous other entities connected to the loan. Defendant Capital One allegedly acquired Greenpoint, including its assets and liabilities, in 2007. Defendants JPMorgran Chase Bank N.A. (JPMorgan) and Wells Fargo Bank N.A. (Wells Fargo) had successor interests in the loan, with Wells Fargo claiming to be the present beneficiary. Defendant Mortgage Electronic Registration System, Inc. (MERS) had been "the beneficiary and nominee for the beneficiary on the Deed of Trust" for the loan while Defendant NDEX West, LLC (NDEX) had been the trustee under the Deed of Trust.

2

Defendant EMC Mortgage Corporation (EMC) had become the loan servicer. The Arons alleged none of the named defendants, however, was the true current owner of the loan.

The FAC contained several causes of action, only some of which are relevant on appeal.

The first cause of action, against all defendants, was for deceit. The Arons alleged defendants' false representations—primarily those of Cunamay, which they imputed to the other defendants—induced them to accept the refinance loan. Cunamay, alleged the Arons, acting as an agent of both Success One and Greenpoint, falsely told them (1) the adjustable rate mortgage being offered was the best and only available loan option, and (2) they could refinance again without penalty if the monthly payment became unaffordable. Cunamay also did not disclose he, and Success One, would receive a commission (a yield spread premium) that would be greater than the commission he would have received for brokering a different loan or for assisting with the original sale plan. The Arons further alleged the notary rushed them through the closing process and they had no time to review the voluminous loan documents. They "could not understand any of the documents" and signed them based on what Cunamay had told them.

The second cause of action, against all defendants, was entitled civil conspiracy. On information and belief, the Arons alleged "[d]efendants conspired and agreed to implement a scheme to deceive and victimize [p]laintiffs through their predatory lending practices" and "did the acts and things alleged herein pursuant to, and in furtherance of, their conspiracy to deceive and victimize [p]laintiffs."

The third cause of action was for negligence. The Arons alleged Greenpoint was negligent in knowingly accepting false information (overstated income) on the loan application, Wells Fargo and NDEX in falsely asserting an interest in the loan, MERS in allowing a shortcut "registry" for transfers of loans, and EMC in collecting plaintiffs' loan payments after plaintiffs claim they no longer had an obligation to pay. The Arons

3

also alleged defendants failed to comply with duties set forth in California Civil Code sections 2923.5 and 2924.

The fifth cause of action, also against all defendants, alleged violations of the Unfair Competition Law (UCL), Business and Professions Code section 17200. The ninth cause of action alleged wrongful foreclosure.

Although many of the events surrounding the refinance took place in 2005, when the Arons entered into the loan, they alleged they only discovered defendants' wrongdoing "within the past year" and alleged any applicable statutes of limitation had been equitably tolled because they had not been in a position to discover defendants' wrongdoing.

JPMorgan, Wells Fargo, MERS, and EMC collectively demurred to the FAC. Greenpoint and Capital One (as Greenpoint's acquirer) filed their own demurrer. Success One, the broker, and NDEX did not demur.

The trial court concluded the first, second, third, and fifth causes of action (primarily linked to conduct at loan origination) were barred by applicable statutes of limitations. It also found the Arons' allegations for these causes of action and the ninth cause of action (for wrongful foreclosure) were fatally insufficient. The trial court entered judgments of dismissal, and the Arons filed a timely notice of appeal.

**DISCUSSION**

*Scope of Appeal*

On appeal, the Arons seek to revive only a portion of their FAC. They address only their causes of action for deceit (first), civil conspiracy (second), negligence (third), unfair competition (fifth), and wrongful foreclosure (ninth). Further, they address the liability of only some defendants under these five causes of action. To the extent they have not briefed other causes of action, we deem those causes abandoned. Similarly, to the extent they have not briefed the liability of certain defendants under the five causes of action they still pursue, we deem those claims abandoned as well. (See *Buller v. Sutter*

4

*Health* (2008) 160 Cal.App.4th 981, 984, fn. 1 ["failure to discuss cause of action on appeal from trial court's order sustaining demurrer constitutes abandonment of that cause of action on appeal"]; *Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948 ["When a brief fails to contain a legal argument with citation of authorities on the points made, we may 'treat any claimed error in the decision of the court sustaining the demurrer as waived or abandoned,' " thus "our review is limited to only those causes of action briefed on appeal."].)

Further, Steven Arons did not sign the loan, and defendants therefore maintain he lacks standing to pursue the causes of action in the FAC. He has made no response. We therefore deem him to have conceded the issue, and conclude only Mary Arons has standing to pursue the causes of action raised on appeal and that dismissal of all causes of actions as to Steven was proper.[1]

### The Demurrer

When reviewing an order sustaining a demurrer, we employ the de novo standard of review. (*Bjorndal v. Superior Court* (2012) 211 Cal.App.4th 1100, 1106.) " 'A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law.' [Citation.] ' "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' " ' " (*San Mateo Union High School*

---

[1] We also note at this juncture that the Arons' briefing on appeal has been less than helpful. To say that it is dense and prolix is an understatement. Their reply brief only compounds the obtuseness of the briefing since it *repeatedly* refers to Wells Fargo, when it seems they must be referring to Greenpoint. Such sloppiness in briefing is inexcusable and we could (and perhaps should) simply refuse to read it. (See Cal. Rules of Court, rule 8.204(a) & (e) [requirements for organizing and supporting arguments with legal and factual authority, and consequences of noncompliance].) We have, however, slogged through the briefs to discern, as best we are able, their arguments on appeal.

5

*District v. County of San Mateo* (2013) 213 Cal.App.4th 418, 425.) " 'In addition to the complaint's allegations, we consider matters that must or may be judicially noticed. [Citations.] We also consider the complaint's exhibits.' " (*Ibid.*)

***First and Second Causes of Action: Deceit and Conspiracy***

Fraudulent deceit consists of: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; Civ. Code, § 1709.) "Additionally, to establish fraud through nondisclosure or concealment of facts, it is necessary to show the defendant 'was under a legal duty to disclose them.' [Citation.]" (*OCM Principal Opportunities Fund v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 845 (*OCM*).)

Arons's first and second causes of action, in reality, comprise a single cause of action for deceit. Each cause of action simply invokes a different theory for holding the demurring defendants secondarily liable for Cunamay's alleged misrepresentations and omissions—the first cause of action invokes an agency theory, the second, civil conspiracy. (See *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510; *City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 211 (*Fillmore*) [conspiracy is "not an independent tort"].) We therefore treat these two causes of actions together.

***Statute of Limitations***

Regardless of the theory of liability, defendants assert the deceit claim is time barred. The allegedly deceitful conduct occurred in 2005 in connection with the making of the refinance loan, and deceit has a three-year limitations period (Code Civ. Proc., § 338, subd. (d)). Arons, however, pleaded delayed discovery, alleging she had no knowledge of, and no reason to discover, defendants' misconduct until she hired her attorney in July 2010, within a year of filing her lawsuit.

6

"[O]rdinarily a party to a contract cannot justifiably claim unawareness of the express provisions of the contract," but "this is not the basis of plaintiffs'" deceit action. (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 964–965 (*Fuller*).) As in *Fuller*, Arons alleges the lender, via the broker, told her the loan was the only one for which she qualified, told her she could refinance in the future if needed, and failed to tell her the full nature of the commission-based compensation to the broker. "[I]t may be that evidentiary facts will ultimately demonstrate the untimeliness of plaintiffs' delayed discovery." (*Id.* at p. 966; see, e.g., *Rivera v. BAC Home Loans Servicing, L.P.* (N.D. Cal. 2010) 756 F.Supp.2d 1193, 1200 [change in loan interest rate might require investigation of certain facts].) However, the alleged representations and omissions could not have been verified by reference to the loan documents. Accordingly, Arons has sufficiently (although barely) alleged delayed discovery to survive demurrer.

*Sufficiency of Allegations*

We now turn to the sufficiency of Arons' deceit allegations. We begin with her agency theory, which, on appeal, she presses only against Greenpoint. She claims Greenpoint bears liability for its alleged agent, Cunamay, who deceived her "at the inception of the loan" by telling her the loan she agreed to was the only one for which she qualified,[2] telling her she could refinance again (without penalty) if unable to afford payments, and not disclosing the full nature of Cunamay's commission-based compensation.

" 'An agent "is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions." ' " (*Violette v. Shoup* (1993) 16 Cal.App.4th 611, 620 (*Violette*), quoting 3 Cal.Jur.3d, Agency, § 1, p. 10.) "An agent for a particular act or transaction is

---

[2] Based on her opening brief, Arons apparently no longer bases her deceit claim on the alleged statement "this is the best loan," conceding it may be too vague to be actionable.

7

called a special agent.  All others are general agents."  (Civ. Code, § 2297.)  " ' "The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties.  [Citations.]"  [Citation.]  "The significant test of an agency relationship is the principal's right to control the activities of the agent.  [Citations.]  It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent; the existence of the right establishes the relationship." ' "  (*Violette*, *supra*, 16 Cal.App.4th at p. 620; Civ. Code, § 2295 ["An agent is one who represents another, called the principal, in dealings with third persons."]; see also *Vallely Investments v. BancAmerica Commercial Corp.* (2001) 88 Cal.App.4th 816, 826; *Stilson v. Moulton–Niguel Water Dist.* (1971) 21 Cal.App.3d 928, 936 (*Stilson*) ["the most important factor of an agency or employee relationship is the *right* to control the manner and means of accomplishing the result desired"].)

A run-of-the mill business relationship is not an agency relationship.  (See, e.g., *Kaplan v. Coldwell Banker Residential Affiliates, Inc.* (1997) 59 Cal.App.4th 741, 746 [franchisor that derives royalties from franchisee not principal].)  Thus, lenders do not ordinarily act as principals vis à viz the sellers of goods to be financed.  (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 991–992 [car "dealer does not act as the financing agency's agent simply because the dealer used forms supplied by the financing agency" when agency was not the exclusive source of financing and did not control contracting process between dealer and buyer, so summary judgment for agency appropriate]; *Bescos v. Bank of America* (2003) 105 Cal.App.4th 378, 395–396 (*Bescos*) [agreeing with *LaChapelle*], citing *Pescia v. Auburn Ford-Lincoln Mercury Inc.* (M.D.Ala. 1999) 68 F.Supp.2d 1269, 1282–1283 (*Pescia*) [although financial institution instructed car dealer how to fill out the forms, gave dealer access to its computer, and directed dealer to use a specific detailed method of explaining the terms of the financing, financial institution did not have control over the particular wrongful conduct alleged].)

8

Moreover, since "a loan transaction is at arm's length" and a "commercial lender pursues its own economic interests in lending money" (*Perlas v. GMAC Mortg., LLC* (2010) 187 Cal.App.4th 429, 436), several federal courts have (predictably—in light of the above-cited cases) concluded loan providers do not ordinarily act as principals viz-a-viz mortgage brokers. (*ING Bank, FSB v. Chang Seob Ahn* (N.D. Cal. 2010) 758 F.Supp.2d 936, 942 ["Hiring [a broker as] an independent contractor does not require relinquishment of supervisory powers. The law merely requires that day-to-day management of the independent contractor's business be left to the independent contractor. Here, it was. Bona was free to keep any hours it chose. It was free to decide how best to educate borrowers about the lending process, and decide which appraiser to hire. Bona decided how much contact with borrowers was regular enough, and what to say to keep them informed. The contract expressly told Bona to modify disclosure agreements 'as necessary or appropriate to comply with any applicable state or local laws or practice.' "]; *Champlaie v. BAC Home Loans Servicing, LP* (E.D. Cal. 2009) 706 F.Supp.2d 1029, 1056–1057 ["although plaintiff has alleged that [lender] offered the brokers incentives to act in ways that furthered [lender]'s interests, there is no allegation indicating that the [lender] gave the brokers authority to represent or bind [lender], or that [lender] took some action that would have given plaintiff the impression that such a relationship existed"]; see also *Rupisan v. JP Morgan Chase Bank, NA* (E.D. Cal., Aug. 29, 2012, 1:12-CV-0327 AWI GSA) 2012 WL 3764022.)

It was once said that, generally, an allegation of agency is a "statement of ultimate fact" and is therefore, of itself, sufficient to avoid a demurrer. (*Skopp v. Weaver* (1976) 16 Cal.3d 432, 439.) But more recently, the Supreme Court has said bare allegations of agency—such as alleging a defendant "was the agent" of another and did all things alleged as an agent—are "egregious examples of generic boilerplate." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 134, fn. 12; *Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1049 [citing *Moore*].) Moreover, *Skopp's* leniency for the

9

"ultimate fact" pleading does not apply "where the specific allegations of a complaint overcome the general allegation of agency by showing that no such relationship existed." (*Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 376; *La Jolla Village Homeowners' Assn. v. Superior Court* (1989) 212 Cal.App.3d 1131, 1148–1149, disapproved on another ground as stated in *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 481, fn. 1 [trial court may disregard agency allegations when other allegations in complaint undermine them]; see generally *Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1235–1236 [specific undermines general].) Accordingly, a bare allegation of agency does not suffice if the other allegations of the complaint undermine it.

Arons's allegations trumpet the generic buzzwords of agency. Most describe nothing more than Greenpoint communicating lending parameters and approvals to the broker, activity typical of a commercial relationship between a potential lender and broker that does not create agency. (See *Bescos*, *supra*, 105 Cal.App.4th at p. 395; *LaChapelle*, *supra*, 102 Cal.App.4th at pp. 991–992.) Thus, the allegations that Greenpoint authorized Success One "to represent to plaintiffs that the loan [with Greenpoint] . . . was approved and would be issued;" "directed the conduct of the broker through closing conditions, funding conditions and 'rate locks' "; and communicated "regarding fluctuating interest rates and demands for specific loan documentation per documentation known as a 'bank matrix' " fall far short of establishing agency.

However, Arons has additionally alleged Greenpoint "directed" Success One "concerning what to tell plaintiffs and prospective borrowers to induce them to enter into" loans with Greenpoint and "directed the broker to inform plaintiffs that the subject loan was the 'best loan available,' that plaintiffs had the ability to repay the loan with their income and that plaintiffs could be refinanced." Merely "making a suggestion" (*Violette*, 16 Cal.App.4th at p. 620) or "prescrib[ing] alterations or deviations in [another's] work" (*Stilson*, *supra*, 21 Cal.App.3d at p. 936) do not give rise to agency.

10

But requiring a broker to make certain statements about a loan, when those very statements are the crux of a fraud claim, may be a different matter. (See *Bescos*, *supra*, 105 Cal.App.4th at p. 396 [suggesting further involvement by financial institution, such as directors connected to the wrongful conduct, might rebut on a different outcome]; *Montoya v. McLeod* (1985) 176 Cal.App.3d 57, 64 ["McLeod negotiated the Montoyas' loan and executed a promissory note in their favor. Thus, much like a mortgage loan broker becomes an agent of the borrower he or she solicits . . . McLeod, vested with some discretionary authority as an agent of a real estate broker, became an agent of would-be lenders, the Montoyas"]; *Pescia*, *supra*, 68 F.Supp.2d at pp. 1282–1283 [rejection of agency based in part on fact financial institution did not control the *particular wrongful conduct alleged*]; see also *Mangindin v. Washington Mut. Bank* (N.D. Cal. 2009) 637 F.Supp.2d 700, 710 ["Although a broker is customarily retained by the buyer, courts have rejected a bright line rule that a mortgage broker may never be the agent of a lender."].) As agency is typically a question of fact not suitable for resolution on summary judgment (*Stilson*, *supra*, 21 Cal.App.3d at p. 936), let alone on demurrer, we conclude Arons's allegations meet the bare minimum to move forward on an agency theory as to Greenpoint.

Greenpoint alternatively argues that even if Arons has sufficiently alleged agency, she has not sufficiently alleged Success One's deceit. The lender asserts Success One's alleged misrepresentations are not actionable (either the statements were true, or are not statements of past or existing fact), Arons did not justifiably rely on any misrepresentations, and Arons did not allege sufficient damages.

The appellate court in *Fuller*, *supra*, 216 Cal.App.4th at pp. 963–964, 967, allowed similar alleged misrepresentations ("able to refinance . . . if they had difficulties making payments in the future," loans were "only ones for which they could qualify," loans provided "illegal kickback" to broker) to survive a demurrer. We likewise conclude some of Success One's alleged statements are actionable here.

11

First, Success One allegedly told Arons she could refinance in the future without penalty if the payments became too burdensome. Although this statement has a future-looking, contingent aspect ("if") (see *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 769 [general rule is prediction of future events not actionable], it nonetheless contains a provably false promise—a categorical assertion of what Arons could do if the loan turned out to be unaffordable. Moreover, the statement was made by a mortgage broker, one who "holds himself out to be specially qualified" in mortgage loans, thus an exception to the "prediction" rule appears applicable. (*Ibid.*; *Fuller*, *supra*, 216 Cal.App.4th at p. 964, fn. 7 ["the opinions of those who have special expertise can be actionable; this is ordinarily a question of fact"]; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 892 (*Jolley*) [statement a loan modification was "highly probable" and "looked good" actionable given relationship of parties].)

Indeed, a "mortgage broker has a fiduciary duty to a borrower." (*Smith v. Home Loan Funding, Inc.* (2011) 192 Cal.App.4th 1331, 1332; see *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 783–784 [law "impose[s] upon mortgage loan brokers an obligation to make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith toward their principals"].) In a residential mortgage transaction, borrowers often "retain[] a mortgage loan broker to negotiate for them highly complex loan terms and they may be assumed to have justifiably relied on the latter's expertise" to explain those terms. (*Wyatt*, *supra*, 24 Cal.3d at p. 784.) Thus in *Wyatt*, failure of the broker to note loan terms "unfavorable to the borrower," even for terms included in the loan papers, was actionable. (*Ibid.*)

The evidence may show Greenpoint's "direction" regarding refinance or Success One's statement in that regard were qualified, or that Arons did not reasonably or detrimentally rely. But, that is a factual matter. (See *Paper Savers, Inc. v. Nacsa* (1996) 51 Cal.App.4th 1090, 1103–1104 (*Paper Savers*) [issue of reasonability of reliance on agent is "complex" and "except in the rare case" must be determined as question of fact];

12

see also *Champlaie v. BAC Home Loans Servicing, LP*, *supra*, 706 F.Supp.2d at pp. 1058–1059 [a "promise[] that plaintiff would be able to refinance his loan" could be actionable as fraud].)

Second, for similar reasons, the statement that Aron's loan was the "only one" available to them, may be actionable. It is a provably false assertion and the reasonableness of her reliance cannot be determined at the demurrer stage. (See *Paper Savers*, *supra*, 51 Cal.App.4th at pp. 1103–1104.)

Having concluded there are some allegations in the FAC sufficient to state a claim for deceit, we need not and do not address the viability of other alleged misrepresentations. Nor do we address the viability of a conspiracy theory of liability. (See *Fuller*, *supra*, 216 Cal.App.4th at p. 968, fn. 8 ["a demurrer lies only as to an *entire* complaint or a count"]; see also *Fox v. JAMDAT Mobile, Inc.* (2010) 185 Cal.App.4th 1068, 1078 (*Fox*) ["as long as a . . . single cause of action contains any well-pleaded cause of action, a demurrer must be overruled even if a deficiently pleaded claim is lurking in that cause of action as well"].)

There is, however, a crucial distinction between the allegations against Greenpoint and those against the other defendants. (See *Fox*, *supra*, 185 Cal.App.4th at p. 1078 ["if a cause of action names two or more defendants, the sufficiency of the complaint against one defendant does not immunize the plaintiff against a properly imposed demurrer by another defendant who may separately demur"].) As noted, Arons does not assert an agency theory against the other defendants. In any case, as to these defendants, Arons makes no more than the most generic allegations of agency, which are insufficient. Her generic conspiracy allegations as to these defendants are insufficient, as well. (See *Moore*, *supra*, 51 Cal.3d at p. 134, fn. 12 [agency]; *Simmons*, *supra*, 213 Cal.App.4th at p. 1049 [citing *Moore*]; *State ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 419 [conspiracy]; *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 723 [simple allegation that defendants conspired to coerce

motorists to purchase more coverage than desired by refusing to sell lesser coverage, too "conclusionary" to allege conspiracy]; *Bartley v. California Association of Realtors* (1980) 115 Cal.App.3d 930, 935 [" 'General allegations of the existence and purpose of the conspiracy are insufficient.' "]; *Davis v. Superior Court In and For Marin County* (1959) 175 Cal.App.2d 8, 23 [" 'Conspiracies cannot be established by suspicions' " or " '[m]ere association.' "].)  As Arons never identified further allegations she could make against these other defendants, the trial court properly sustained these defendants' demurrer without leave to amend.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*) [burden on the plaintiff to show " 'reasonable possibility' " of amending]; *Herrera v. Federal Nat. Mortg. Assn.* (2012) 205 Cal.App.4th 1495, 1506 [amendments not first proposed in trial court should not be considered on appeal].)  Accordingly, as to all other demurring defendants, the demurrers as to Arons's first and second causes of action were properly sustained without leave to amend.

*Fifth Cause of Action:  UCL*

Arons asserts her UCL cause of action is entirely "derivative" of her deceit claim. As her deceit claim survives against Greenpoint, as discussed above, so too does her UCL claim against Greenpoint.  Although an "unfair practices claim under section 17200 cannot be predicated on vicarious liability," (*Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952, 960), the underlying deceit claim against Greenpoint, as we presently understand it, is not predicated solely on a vicarious liability theory, but, at least in part, on Greenpoint's "personal 'participation in the unlawful practices' " by allegedly directing Success One to take particular actions.  (*Ibid.*; see *Fuller*, *supra*, 216 Cal.App.4th at pp. 967–968 [allowing UCL claim based on lender's conduct].)  As to all other demurring defendants, the demurrers to Arons's fifth cause of action were properly sustained without leave to amend.

14

*Third Cause of Action:  Negligence*

On appeal, Arons has narrowed her purported negligence claim to Greenpoint's alleged acceptance of false information (overstated income) on the executed loan application.  She makes no arguments concerning Wells Fargo, MERS, NDEX, or EMC.

This cause of action against Greenpoint is barred by the applicable statute of limitations—two-years.  (Code Civ. Proc., § 339; see also *Fuller*, *supra*, 216 Cal.App.4th at p. 963.)  The overstated income *in the loan application* in 2005, was something Arons could have, and should have, discovered at that time, and her allegations of delayed discovery cannot save this cause of action grounded in the loan documents she signed. (Cf. *id.* at pp. 964–965 [noting a party is presumed aware of contract's contents].) Accordingly, the trial court properly sustained all demurrers to Arons's cause of action for negligence without leave to amend.  (*Vaca v. Wachovia Mortg. Corp.* (2011) 198 Cal.App.4th 737, 746 [when "[n]o reasonable possibility exists that plaintiff could amend to plead around the limitations periods," dismissal with prejudice proper].)

*Ninth Cause of Action:  Wrongful Foreclosure*

Aron's ninth cause of action for wrongful disclosure turns on her allegation the notice of default was "void" because the issuer of the notice—NDEX , as an agent of the beneficiary of the deed of trust, MERS—lacked authority to issue it.  She asserts the issuer could only have obtained an interest in the loan from MERS, which, as best we can understand her allegations and arguments, either (1) had forfeited its interest by somehow "securitizing" the refinance loan at or near its inception, or (2) may have had an interest in the deed of trust, but not an assignable interest in the loan note as a mere nominee of the lender.

This cause of action is foreclosed by this court's decision in *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 (*Fontenot*) and the Fourth District's decision in *Herrera v. Federal Nat. Mortg. Assn.* (2012) 205 Cal.App.4th 1495 (*Herrera*).

These cases reject Aron's perceived shortcomings in MERS' ability to assign her loan.  (*Fontenot*, *supra*, 198 Cal.App.4th at p. 271 [a "purported assignment by MERS was [not] invalid under the common law of secured transactions"; an "allegation that MERS was merely a nominee is insufficient to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf of the original lender"]; *Herrera*, *supra*, 205 Cal.App.4th at p. 1506 ["Because the [deed of trust] stated MERS held all the rights of the lender, including the right to foreclose, there was no abuse of discretion in the trial court concluding plaintiffs were precluded from contesting MERS's authority to assign."]; see also *Lane v. Vitek Real Estate Industries Group* (E.D. Cal. 2010) 713 F.Supp.2d 1092, 1099 ["The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts."]; *Hafiz v. Greenpoint Mortg. Funding, Inc.* (N.D. Cal. 2009) 652 F.Supp.2d 1039, 1043 [noting "the erroneous theory that all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool"].)

Both *Fontenot* and *Herrera* also rejected wrongful foreclosure claims in the absence of prejudice.  (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272; *Herrera*, *supra*, 205 Cal.App.4th at pp. 1507–1508.)  "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. . . . [A]n assignment merely substitute[s] one creditor for another, without changing . . . obligations under the note."  (*Fontenot*, *supra*, at p. 272.)  Arons makes no allegation any transfer interfered with an attempt to pay off the note or that the appropriate entity would have "refrained from foreclosure under the circumstances."  (*Ibid.*)  "If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of [its] promissory note."  (*Ibid.*)

16

## DISPOSITION

The judgments of dismissal are affirmed, except as to Greenpoint and to Capital One, solely as the alleged successor to Greenpoint's liabilities.[3]  As to Greenpoint and Capital One, the judgment is reversed in part.  Their demurrer to Mary Arons's first and second causes of action for deceit, and fifth cause of action for violation of the UCL, should have been overruled.[4]  The parties shall bear their own costs on appeal.

_____

Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Sepulveda, J.[*]

---

[3]  Successor liability may occur upon express or implied assumption of liabilities. (*Beatrice Co. v. State Bd. of Equalization* (1993) 6 Cal.4th 767, 778.)  At this stage, Capital One has not argued against the application of successor liability.

[4]  We have ruled only that these causes of action contain allegations sufficient to survive a demurrer, and our ruling should not be construed in any respect as suggesting anything about the merits of Arons' claims.  (See, e.g., *Fuller, supra,* 216 Cal.App.4th at 966.)

[*]  Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.