Filed 5/17/16  Calderon v. The Bank of New York Mellon CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| ARTURO CALDERON et al.,<br><br>　　　　Plaintiffs and Appellants,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON et al.,<br><br>　　　　Defendants and Respondents. | B263854<br>(Los Angeles County<br>Super. Ct. No. BC548639) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debre Katz Weintraub, Judge.  Affirmed.

Law Offices of Juanita V. Miller and Juanita V. Miller; Travis M. Poteat for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton and Kerry W. Franich for Defendants and Respondents.

In the underlying action, appellants Arturo and Rochelle Calderon asserted claims against respondents Bank of America, N.A. (BOA) and The Bank of New York Mellon (New York Mellon) for deceit, negligence, unfair business practices, violations of Civil Code section 1090.5, and declaratory relief. The trial court sustained respondents' demurrer to the first amended complaint without leave to amend, concluding that the Calderons' claims were time-barred. We affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 2014, the Calderons initiated the underlying action. Their complaint identified BOA as the assignee of Countrywide Home Loans, Inc. (Countrywide), and New York Mellon as a "[s]ecuritized trust."[1] Also named in the complaint as defendants were Suncoast Real Estate Services, Inc. (Suncoast), Daniel Contreras, and Lorenzo Feal.

The complaint contained claims for deceit, civil conspiracy, negligence, violations of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), and declaratory relief, which were predicated on allegations that misconduct occurred during the refinancing of the Calderons' home loan and their attempt to secure a modification of the refinanced loan. The complaint alleged that in 2007, when the Calderons refinanced their home loan, Contreras, Feal, Suncoast, and Countrywide engaged in improper conduct during the refinancing process. The complaint further alleged that from 2009 to 2013, when the Calderons sought to modify the refinanced loan, BOA engaged in additional misconduct.

---

[1]    The complaint alleged that New York Mellon was formerly known as "The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-HY6 Mortgage Pass-Through Certificates, Series 2007-HY6."

Accompanying the complaint was a copy of the deed of trust relating to the 2007 refinanced loan.

Respondents demurred to the complaint, contending that the Calderons' claims were time-barred under the applicable statutes of limitations or failed as a matter of law. The trial court sustained the demurrer, but afforded the Calderons leave to amend their claims, with the exception of their conspiracy claim.

In November 2014, the Calderons filed their first amended complaint (FAC), asserting claims for deceit, negligence, violations of the UCL, violation of Civil Code section 1090.5, and declaratory relief. Respondents demurred to the FAC on the grounds that its claims were untimely under the applicable statutes of limitations. The trial court sustained the demurrer to the FAC without leave to amend. On March 16, 2015, the court entered an order dismissing the Calderons' action. This appeal followed.

## DISCUSSION

The Calderons contend the trial court erred in sustaining the demurrer to the FAC without leave to amend. For the reasons discussed below, we disagree.

A. *Standard of Review*

"Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. [Citation.] . . . Appellate courts first review the complaint de novo to determine whether or not the . . . complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 (*Cantu*).) Moreover, "[i]f another proper ground for

3

sustaining the demurrer exists, this court will still affirm the demurrer[] even if the trial court relied on an improper ground . . . ." (*Id*. at p. 880, fn. 10.)

"When [so] reviewing a demurrer on appeal, appellate courts generally assume that all facts pleaded in the complaint are true. [Citation.]" (*Cantu*, *supra*, 4 Cal.App.4th at p. 877, fn. omitted.) However, "[t]he complaint should be read as containing the judicially noticeable facts, 'even when the pleading contains an express allegation to the contrary.'" (*Id*. at p. 877, quoting *Chavez v. Times-Mirror Co.* (1921) 185 Cal. 20, 23.)

"Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action. [Citation.]" (*Cantu, supra,* 4 Cal.App.4th at p. 879, fn. 9.)

B. *Governing Principles*

Here, our focus is on whether the allegations in the FAC establish that the Calderons' claims are untimely. The parties do not dispute that the claims are subject to limitations periods not exceeding four years. The negligence claim, which is founded on the duty of care applicable to real estate professionals, falls under a two-year statute of limitations. (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606.) The limitations period for the claim for deceit is three years. (*Fuller v. First Franklin Financial Corporation* (2013) 216 Cal.App.4th 955, 963 (*Fuller*); Code Civ. Proc., § 338, subd. (d).) As Civil Code section 1090.5 prohibits misconduct relating to an appraisal, claims under it are subject to the three-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." (Code Civ. Proc., § 338, subd. (a).) A four-year limitations period is applicable to the UCL claim, which is founded on the misconduct underlying the claims described above. (*Fuller*, *supra*, 216

4

Cal.App.4th at p. 963.) Finally, because the claim for declaratory relief is predicated on the obligations underpinning the other claims, it is subject to the limitations periods pertinent to those obligations. (*Snyder v. California Ins. Guarantee Assn.* (2014) 229 Cal.App.4th 1196, 1208 (*Snyder*).)

The applicable limitations periods began when the Calderons' claims accrued, absent special circumstances. Tort claims ordinarily accrue "upon the occurrence of the last element essential to the cause of action" (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 188 (*Neel*)), that is, "when the cause of action is complete with all of its elements" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397). The same is true of claims based on statutorily imposed liabilities. (*Howard Jarvis Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815.) The principle also applies to UCL and declaratory relief claims grounded on claims subject to the principle. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1196; *Snyder*, *supra*, 229 Cal.App.4th at p. 1208.)

The harshness of the accrual principle is mitigated by several doctrines, two of which are invoked by the Calderons, namely, the discovery rule and equitable tolling.[2] California courts have long applied the discovery rule to "claims involving difficult-to-detect injuries or the breach of a fiduciary relationship." (*Royal Thrift and Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 43.) Under that rule, "the limitations clock only begins to run on certain causes of action when the injured party discovers or should have discovered the facts supporting liability. [Citations.]" (*Davies v. Krasna* (1975) 14 Cal.3d 502, 512-513.)

---

**2** Although the Calderons' opening brief also relies on a third doctrine -- namely, equitable estoppel -- they expressly abandoned their reliance on that doctrine in their reply brief.

The discovery rule imposes a pleading requirement on parties alleging potentially time-barred claims. "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808, quoting *McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160.)

The doctrine of equitable tolling, also relied upon by the Calderons, "applies '"[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one."'" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 100 (*McDonald*), quoting *Elkins v. Derby* (1974) 12 Cal.3d 410, 414 (*Elkins*).) The doctrine may be applied in the presence of three elements: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to [the] defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." (*Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 924 (*Collier*).) Although invocation of the doctrine of equitable tolling generally triggers a factual inquiry, the question can be resolved in the context of a demurrer when the facts as alleged are irreconcilable with equitable tolling. (*Cervantes v. City of San Diego* (9th Cir. 1993) 5 F.3d 1273, 1276-1277.)

C.  *Facts*

The FAC alleges the following facts:  In early 2007, the Calderons owned a residence in Los Angeles.  They were renovating the residence, and wanted to refinance their existing home loan.  Contreras, an employee of Suncoast, contacted the Calderons and informed them that he was a licensed mortgage broker.  When the Calderons said that they wanted a 30-year fixed rate loan that included "impounds," Contreras stated that he could arrange for Countrywide to provide a 30-year fixed rate loan with monthly payments of $3,100, which included interest, taxes, and insurance.

In the course of securing the new loan, Contreras hired Feal to appraise the Calderons' residence.  On the day of the appraisal, Contreras placed new kitchen cabinets and drywall in the residence in order to make the residence appear to be worth more than it was.  Contreras told the Calderons that the residence would be valued at approximately $750,000 to $850,000.  Following Feal's appraisal, Contreras removed the kitchen cabinets and drywall.  Although the residence was worth no more than $430,000, Feal estimated its value at approximately $800,000.  In making that estimate, Feal selected "sale[s] comparables" that inflated the value of the Calderons' residence.  The Calderons never received a copy of the appraisal, even when they later requested one.

According to the FAC, Contreras, Suncoast, and Feal, along with Countrywide and all other named defendants, knew that the appraisal of the residence was "false, inflated, and overstated from the outset."  At some point, the appraised value was disclosed to the Calderons in order to persuade them that the loan Contreras arranged for them was the best they could obtain.

In March 2007, Contreras offered the Calderons a mortgage loan from Countrywide that he misrepresented as complying with their requirements.  He told the Calderons that they had been pre-approved for a 30-year fixed rate loan, that

7

the loan was the best available, and that their monthly payments would be fixed at $3,000, which included interest, taxes, and insurance. In contrast, the loan that Contreras secured from Countrywide had a fixed interest rate for only five years. Furthermore, the monthly payments did not include interest, taxes, and insurance, and would eventually increase from approximately $3,100 to approximately $4,100.

The Calderons, who were unsophisticated in real estate matters, relied on the value that defendants' appraisal placed on their residence. As a result, they accepted the "unsuitable and over-priced loan."

When the Calderons received their first mortgage statement, they saw that the monthly payments were approximately $300 more than Contreras had represented they would be. In March 2008, when their monthly payments increased to $3,782, they informed Countrywide that the payments were incorrect. In December 2008, the monthly payments increased to $3,876.11, and continued to increase. The Calderons struggled to make the payments.

In 2009, when the Calderons' family income diminished, they sought a modification of the loan. In November 2009, they began discussions regarding alternatives to foreclosure with BOA, as Countrywide's successor in interest. In March 2012, BOA granted them a trial loan modification which set their monthly payments at $3,258. The Calderons found those payments onerous, but made them until March 2013, when BOA denied them a permanent loan modification.

In March 2013, after the denial of the permanent loan modification, the Calderons first discovered "[t]he significance of the [d]efendants' mispresentation regarding the false value . . . assigned to [their] home." They realized that their "over-priced" refinanced loan was attributable to the inflated appraised value of their residence, and that defendants would not extend affordable loan terms to them.

8

D. *Analysis*

We conclude that the trial court correctly sustained respondents' demurrer to the FAC. Absent application of a tolling rule, the Calderons' claims, as alleged in the FAC, accrued no later than when they executed the mortgage loan secured by Contreras and began making payments under it, as they allege those payments were $300 more than Contreras had represented they would be. Although the FAC does not specify the dates of those events, they necessarily occurred no later than March 2008, when the FAC alleges that the payments were increased from their original amount. For the reasons explained below, neither the discovery rule nor the doctrine of equitable tolling operated to delay the accrual of the Calderons' claims beyond the end of 2008. Accordingly, their claims are time-barred, as even the claim subject to the longest limitations period -- the UCL claim, to which a four-year period is applicable -- accrued more than six years before the Calderons commenced the underlying action on June 13, 2014.

### 1. *Allegations Omitted From FAC*

To begin, we observe that the trial court, in sustaining respondents' demurrer to the FAC, could properly have considered allegations and other matters included in the original complaint, but omitted in the FAC.[3] Generally, a party may not amend a complaint by omitting allegations fatal to its claims without offering an adequate explanation for the omission. (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 835.) Thus, when a complaint alleges precisely when a contract was executed, the plaintiff cannot avoid a demurrer to a contract-based claim

---

[3] The Calderons elected not to designate the transcript of the hearing below, and the record discloses no statement of the trial court's rationale for sustaining the demurrer without leave to amend.

9

predicated on the statute of limitations merely by amending the complaint to describe the contract's execution date in less precise terms. (*Kenworthy v. Brown* (1967) 248 Cal.App.2d 298, 302-303.) In such cases, a court "may examine the prior complaint to ascertain whether the amended complaint is merely a sham." (*Id*. at p. 302.)

Here, the original complaint alleged that shortly after the Calderons' payments increased in March 2008, they requested an explanation from Contreras. According to the complaint, Contreras said that "'he . . . did not have control over tax issues[.]'" The complaint also alleged that the Calderons then contacted Countrywide, which said that "principal was not being paid." Furthermore, attached to the original complaint -- but omitted from the FAC -- was a copy of the deed of trust relating to the 2007 refinanced loan. Accompanying that deed is a document entitled "Fixed/Adjustable Rate Rider" (rate rider), stating that the loan's fixed rate would change to an adjustable rate in April 2012.[4]

Although the FAC omits the allegations described above and the rate rider, those matters are properly included within our review of the ruling regarding the FAC. In demurring to the original complaint, respondents contended the discovery rule could not render the Calderons' claims timely, as the complaint's allegations -- together with the rate rider -- showed the Calderons necessarily knew of Contreras' purported misrepresentations regarding their loan in 2008 or 2009. Respondents' demurrer to the FAC again relied in part on the original complaint and the attached

---

[4]    The first page of the rider contained the following text in bold-face capital letters: THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE." On the same page, the rate rider stated in pertinent part: "Borrower . . . agree[s] as follows: [¶] . . . [¶] . . . The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of APRIL, 2012, and the adjustable interest rate I will pay may change on that day every 12th month thereafter."

10

rate rider. For that reason, we consider the allegations of the original complaint and the rate rider in our analysis.

### 2. *Discovery Rule*

The Calderons contend the discovery rule tolled the accrual of their claims for a period sufficient to avoid the operation of the pertinent statutes of limitations. As explained below, that contention fails.

When applicable, "[t]he discovery rule protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 832.) The rule thus tolls the accrual of a claim "until the aggrieved party has notice of the facts constituting the injury." (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1318 (*E-Fab*).) In this context, "[n]otice may be actual or constructive. [Citation.] Actual notice is 'express information of a fact,' while constructive notice is that 'which is imputed by law.' [Citation.] A person with 'actual notice of circumstances sufficient to put a prudent man upon inquiry' is deemed to have constructive notice of all facts that a reasonable inquiry would disclose. [Citations.]" (*Id*. at pp. 1318-1319.) To trigger the requisite constructive notice, "'[t]he circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent commission.'" (*Hobart v. Hobart Estate Co*. (1945) 26 Cal.2d 412, 438, italics omitted, quoting *Tarke v. Bingham* (1898) 123 Cal. 163, 166.)

Because Contreras' alleged misrepresentations form the primary basis for the claims, our focus is on the allegations relating to him. For purposes of invoking the discovery rule, the FAC contains sufficient allegations that he had a fiduciary duty to the Calderons, as it describes him as acting as their mortgage

11

broker (*Smith v. Home Loan Funding, Inc.* (2011) 192 Cal.App.4th 1331, 1335 ["[A] mortgage broker has a fiduciary duty toward the borrower."]). Accordingly, the key question regarding the application of the discovery rule is when the Calderons had actual or constructive notice of Contreras' misconduct.

In resolving that question, we examine when the Calderons learned facts warranting the suspicion that Contreras was engaged in the misconduct underlying their claims. (*E-Fab, supra*, 153 Cal.App.4th at pp. 1318-1319.) For purposes of the discovery rule, constructive notice is "triggered by suspicion." (*Id*. at p. 1319.) As our Supreme Court has explained, "[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111, fn. omitted.)

Here, the FAC's allegations of misconduct place special emphasis on Contreras' manipulation of the 2007 appraisal through his installation of temporary improvements in the Calderons' house. In addition, the FAC attributes several misrepresentations and acts of concealment to Contreras. According to the FAC, during the appraisal process, Contreras informed the Calderons that the appraised value of their house would be no less than $750,000 (even though it was worth no more than $430,000) and he never gave them a copy of the appraisal. Later, he falsely informed the Calderons that they had been pre-approved for a 30-year fixed rate mortgage loan, that the loan he offered them was the "best one available," and that their monthly payments would be fixed at $3,000, including interest, taxes,

12

and insurance. He failed to disclose that the loan had a fixed interest rate for only five years, that the monthly payments did not include interest, taxes, and insurance, and that the payments would increase to approximately $4,100. Furthermore, the FAC alleges that at some point, when the Calderons requested a copy of the appraisal, the defendants -- including Contreras -- refused to provide one.

The FAC's allegations, viewed in combination with the original complaint and the rate rider, establish that no later than the end of 2008, the Calderons had notice of the misconduct alleged against Contreras, namely, his manipulation of the appraisal and deceptions regarding the new loan's terms. The FAC alleges that on the day of the appraisal, Contreras arrived at the Calderons' residence, installed the drywall and cabinets, informed the Calderons of the expected appraised value of the house, and then removed the improvements after the appraiser departed. Nothing in the FAC suggests the Calderons were unaware of Contreras' conduct regarding those temporary improvements.

Additionally, in 2007 and 2008, the Calderons were apprised of facts establishing that the terms of their new loan were not as described by Contreras. The rate rider expressly disclosed that the loan was not subject to a fixed rate for the 30-year term, but would "change to an adjustable interest rate on the first day of A[pril] 2012." Contrary to Contreras' representations that the monthly payments would be fixed at $3,000, the initial payments were approximately $3,300, and by December 2008, they had increased to $3,876.11. Furthermore, according to the original complaint, when the Calderons contacted Contreras and Countrywide regarding the payments, Contreras told them that he had no control over taxes, and Countrywide informed them that the payments did not include principal. That information was inconsistent with Contreras' earlier representations. Accordingly, under the discovery rule, the Calderons' claims

13

accrued no later than the end of 2008. As this is more than six years before the Calderons initiated suit, their action is untimely.

The Calderons contend the discovery rule tolled the accrual of their claims until March 2013, when they were denied a modification of the loan. They argue that they were unsophisticated in real estate matters and thus dependent upon Contreras' expertise. Placing special emphasis on the FAC's allegation that they were denied a copy of the appraisal, they argue that Contreras' misconduct was effectively hidden from them, and thus could not trigger a reasonable suspicion of wrongdoing. We disagree.

In some circumstances, misconduct that is not physically concealed may nonetheless support the application of the discovery rule. As explained in *Evans v. Eckelman* (1990) 216 Cal.App.3d 1609, 1615, "when the breach and damage are not physically hidden, they may be beyond what the plaintiff could reasonably be expected to comprehend. An action for professional malpractice, for example, typically involves the professional's failure to apply his or her specialized skills and knowledge. 'Corollary to this expertise is the inability of the layman to detect its misapplication; the client may not be able to recognize the negligence of the professional when he sees it.'" (Quoting *Neel*, *supra*, 6 Cal.3d at p. 188; accord, *Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1526.)

The FAC alleges no such circumstances, as the misconduct by Contreras was visible to the Calderons and required no specialized expertise to understand. According to the FAC, during the appraisal process, Contreras made temporary improvements to the residence and informed the Calderons of the expected appraised value of the house. The improvements were removed following the appraisal. The significance of Contreras' conduct was thus manifest regardless of the Calderons's access to a copy of the appraisal. Similarly, the differences

14

between the actual monthly payments and Contreras' earlier descriptions were apparent to the Calderons as soon as they received their first mortgage statement.

The Calderons' reliance on *Fuller*, *supra*, 216 Cal.App.4th 955 and *Gryczman v. 4550 Pico Partners, Ltd.* (2003) 107 Cal.App.4th 1 (*Gryczman*) is misplaced. In *Fuller*, the plaintiffs initiated an action in 2010 against a loan broker and the lender that provided the funding for the purchase of their home, asserting claims for deceit, negligence, and unfair business practices (*id.* at p. 958). The claims were predicated on allegations that the defendants arranged an "artificially inflated appraisal" of the house in 2006 and concealed the true facts from the plaintiffs, who were unsophisticated in real estate matters. (*Id.* at pp. 963-965.) The complaint further alleged that the plaintiffs first discovered the misconduct in 2009, when they learned that the inflated appraisal had led them to accept a loan with unnecessarily unfavorable terms. (*Id.* at pp. 958-961.)

After the defendants successfully demurred to the complaint on the ground that the claims were time-barred, the appellate court reversed. (*Fuller*, *supra*, 216 Cal.App.4th at pp. 965-968.) Applying the discovery rule, the court concluded that under the facts alleged in the complaint, the claims were tolled until the plaintiffs' discovery of the appraisal-related improprieties in 2009. (*Id.* at pp. 963-968.) The court determined that the plaintiffs were entitled to rely on the defendants' expertise during the 2006 purchase of the home, and that from 2006 to 2009, no "'red flag'" event occurred sufficient to place the plaintiffs on notice regarding those improprieties. (*Id.* at p. 966.) Here, in contrast, as detailed above, the Calderons' complaints reflect several red flags that reasonably alerted them to the alleged misconduct no later than the end of 2008.

In *Gryczman*, the plaintiff obtained the right of first refusal to buy real property. (*Gryczman*, *supra*, 107 Cal.App.4th at pp. 3-4.) After discovering by chance that the property had been sold to another party, the plaintiff initiated an

15

action against the property's original owner, which was dismissed as time-barred. (*Id*. at p. 4.)  The appellate court reversed, concluding that the discovery rule tolled the plaintiff's claims because the owner's alleged misconduct -- namely, the sale of the property without honoring the plaintiff's right of first refusal -- necessarily rendered that misconduct difficult to detect.  In contrast, the Calderons were repeatedly exposed to facts showing misconduct by Contreras.

The Calderons also contend that because Contreras breached his fiduciary duty to them to disclose or explain the significance of the appraisal and the new loan's actual terms, they were under no obligation to inquire into the appraisal or the new loan.  Under the facts alleged in the Calderons' complaints, however, that contention fails.

Generally, "[w]here a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity. [Citations.]  The existence of a trust relationship limits the duty of inquiry.  'Thus, when a potential plaintiff is in a fiduciary relationship with another individual, that plantiff's burden of discovery is reduced and he is entitled to rely on the statements and advice provided by the fiduciary.'  [Citation.]"  (*Eisenbaum v. Western Energy Resources, Inc.* (1990) 218 Cal.App.3d 314, 324, quoting *Sherman v. Lloyd* (1986) 181 Cal.App.3d 693, 698.)

Nonetheless, that limitation on the duty of inquiry ends when the plaintiff becomes "'aware of facts which would make a reasonably prudent person suspicious . . . .'"  (*Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 921, quoting *Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 131.)  Once apprised of such facts, the plaintiff  "ha[s] a duty to investigate further, and [is] charged with knowledge of matters which would have been revealed by such an investigation."  (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875.)

As explained above, as early as March 2007, the Calderons knew facts sufficient to raise a reasonable suspicion regarding the integrity of the appraisal, in particular, Contreras' installation of temporary improvements in their residence and removal of the improvements after the appraisal. Later, in 2007 and 2008, the Calderons discovered that their initial monthly payments were $300 more than Contreras represented they would be, and became aware of other facts establishing that his description of the new loan's terms was materially false. Indeed, according to their original complaint, when questioned, Contreras expressly disavowed his earlier representation that the monthly payments were "fixed" as to taxes. Accordingly, the existence of Contreras' fiduciary duty did not toll the accrual of their claims after 2008. In sum, the FAC fails to plead facts sufficient under the discovery rule to avoid the applicable statutes of limitations.[5]

### 3. *Equitable Tolling*

The Calderons contend the doctrine of equitable tolling delayed the accrual of their claims until March 2013, approximately one year before they initiated the underlying action. They argue that they had two legal remedies regarding

---

[5] In a related contention, the Calderons suggest their claims are timely under the doctrine of fraudulent concealment, which is "[a] close cousin of the discovery rule" (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931). However, that contention fails for the reasons discussed above. "'It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.'" (*Ibid*.) Thus, "[m]ere ignorance, *not induced by fraud* of the existence of facts constituting a cause of action does not prevent the running of the statute of limitations." (*Baker v. Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 321.) Because the Calderons had ample notice of their claims by the end of 2008 notwithstanding Contreras' deceptive conduct, the doctrine of fraudulent concealment does not render their claims timely.

respondents' alleged misconduct, namely, filing a court action or seeking a loan modification. They further argue that by requesting a loan modification from BOA in November 2009, they asserted a timely "first claim" sufficient to toll the accrual of their claims until March 2013, when BOA denied a permanent loan modification. As explained below, we reject that contention.

### a. *Requirements for Equitable Tolling*

Equitable tolling is a judicially created, nonstatutory doctrine "'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations -- timely notice to the defendant of the plaintiff's claims -- has been satisfied.'" (*McDonald*, *supra*, 45 Cal.4th at p. 99, quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 38.) The doctrine emerged in the 1970's, when our Supreme Court weaved together three preceding lines of cases. (*Collier*, *supra*, 142 Cal.App.3d at p. 923.) Under a line of cases traceable to *County of Santa Clara v. Hayes Co*. (1954) 43 Cal.2d 615 (*Hayes*), courts had ruled that a limitations period may be tolled in some circumstances because the plaintiff pursued another course of conduct to minimize damages. (See *Collier*, *supra*, 142 Cal.App.3d at p. 923.) "Another line tolled statutes of limitation when administrative remedies had to be exhausted before a court would consider the case. [Citations.] Still a third line of cases tolled the limitation period of a second action during the pendency of a first action later found to be defective. [Citations.]" (*Ibid.*)

As our Supreme Court has explained, application of the doctrine requires a showing of three elements, "'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'" (*McDonald*, *supra*, 45 Cal.4th at p. 102.) In this context, "'"[t]he timely notice requirement essentially means that the first claim must have been filed within the statutory

18

period.  Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim.  Generally this means that the defendant in the first claim is the same one being sued in the second."  [Citation.]  "The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second."  [Citation.]'"  (*McDonald, supra,* 45 Cal.4th at p. 102, fn. 2, quoting *Downs v. Department of Water & Power* (1997) 58 Cal.App.4th 1093, 1100.)

A "first claim" sufficient to toll the limitations period can occur in many procedural forums, including judicial actions (*Nichols v. Canoga Industries* (1978) 83 Cal.App.3d 956, 962-965 [federal court action]) and administrative proceedings (*Elkins*, *supra*, 12 Cal.3d at pp. 418-419 [claim for benefits filed with Workmen's Compensation Appeals Board].)  The claim procedure also may be established by contract.  (*Marcario v. County of Orange* (2007) 155 Cal.App.4th 397, 407-409 [equitable tolling applied when union employee pursued grievance procedure specified in the union's memorandum of understanding with employer].)  Invocation of an informal workplace complaint procedure also may constitute a "first claim" when the applicable statute of limitations is intended to promote the resolution of such complaints.  (*McDonald*, *supra*, 45 Cal.4th at pp. 106-111 [employee's internal discrimination complaint against her employer equitably tolled her claims under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), as the provisions of that statutory scheme -- including the statute of limitations -- must "be construed liberally for the accomplishment of [its] purposes" (Gov. Code, § 12993, subd. (a))].)

In contrast, conduct by the plaintiff not constituting a claim does not trigger equitable tolling, even when that conduct informs the defendant that a claim is

impending. (*Acuña v. Regents of University of California* (1997) 56 Cal.App.4th 639, 647-648 [plaintiff's "letter writing campaign" challenging the termination of his employment did not toll his FEHA claims, as that conduct did not implement any administrative remedy available to him]; *Scharer v. San Luis Rey Equine Hospital, Inc.* (2012) 204 Cal.App.4th 421, 427, 431 [plaintiff's notice to defendant that she intended to sue in 90 days did not toll her claims for that 90-day period because the notice itself was not a remedy].) Thus, mere informal negotiations to resolve a litigable dispute ordinarily do not trigger equitable tolling. (*65 Butterfield v. Chicago Title Ins. Co.* (1999) 70 Cal.App.4th 1047, 1062-1063 [plaintiff's negotiations with county intended to resolve dispute regarding existence of easement did not toll its claims against title insurer].)

### b. *No First Claim*

We conclude that the Calderons' 2009 request for a loan modification did not constitute a "first claim," for purposes of equitable tolling. Regarding that request, the FAC alleges: "[The Calderons] struggled financially to make their mortgage payments [under the 2007 loan]. In or about 2009, a diminution in [their] family income resulted in [their] seeking a modification of their . . . loan. [¶] . . . On or about November 2009, [the Calderons] began discussing with [BOA] (as successor in interest to Countrywide) alternatives to foreclosure. On or about March 2012, [BOA] granted [the Calderons] a trial loan modification . . . . [¶] . . . [The Calderons] faithfully tendered all payments required [of] them to [BOA] for over a year until March 2013 when [the Calderons] were denied a permanent loan modification."

These allegations disclose no claim sufficient to trigger equitable tolling. Under that doctrine, """"the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for

20

the second claim.""" (*McDonald, supra,* 45 Cal.4th at p. 102.)  As noted in *Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co.* (2002) 98 Cal.App.4th 934, 954 (*Apple Valley*), the first claim is subject to "[t]he requirement that the alternative proceeding apprise the defendant of the nature of the claim and the plaintiff's intent to litigate . . . ."  Nothing in the Calderons' request, as alleged in the FAC, would have alerted New York Mellon or BOA to the need to prepare for future litigation.

The FAC contains no allegation that New York Mellon participated in, or knew of, the request for a loan modification.  Equitable tolling does not apply "where the first proceeding did not involve the defendant sued in the second proceeding," unless the plaintiff's conduct relating to the first proceeding clearly provided notice of the potential claims against the defendant.  (*Apple Valley*, *supra*, 98 Cal.App.4th at p. 956.)  Because the request was not directed to New York Mellon, and the FAC otherwise does not suggest that New York Mellon was aware of the loan modification discussions, the Calderons' claims against New York Mellon are not subject to equitable tolling.

Although the request for a loan modification was directed to BOA, nothing in the FAC shows that the request itself gave BOA notice that it was vulnerable to potential claims by the Calderons as Countrywide's successor.  The FAC alleges only that financial concerns motivated the Calderons to engage in discussions with BOA regarding a loan modification, without suggesting that they asserted or raised potential misconduct relating to the 2007 loan.  Under the facts alleged in the FAC, the Calderons neither invoked any procedure for making a claim nor otherwise claimed an entitlement to modified loan terms linked to irregularities in the 2007 loan.  On the contrary, the Calderons' complaints allege that they did not realize that they had grounds for a claim of misconduct relating to the 2007 loan until

21

March 2013.  Accordingly, the Calderons' claims against BOA are not subject to equitable tolling.

*Hayes*, *supra*, 43 Cal.2d 615 and *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 679-680, upon which the Calderons rely, are inapposite.  In *Hayes*, a county sued a newspaper, alleging that its publication of a proposed county charter was so defective that the charter was invalidated following its approval by the voters and certification by the Legislature.  (*Hayes*, *supra*, at pp. 616-617.)  In holding that the action was not untimely, our Supreme Court determined that the county's claim against the newspaper was tolled from the date the charter went into effect until it was invalidated, relying on the principle that accrual of a claim is delayed while a plaintiff is legally prevented from asserting the claim.  (*Id*. at pp. 618-619.)  That principle was applicable, the court concluded, because any action against the publisher during that period necessarily would have failed for want of a showing of damages.  (*Ibid*.)  The court rejected a contention that such tolling was impermissible because the county could have -- but did not -- assert its claim against the newspaper *before* the charter went into effect, reasoning that the county's decision to pursue certification of the charter represented a justified effort to avoid damages.  (*Ibid*.)  The rationale for tolling in *Hayes* is inapplicable here, as nothing before us suggests that the Calderons were ever legally prevented from asserting their claims.

In *Prudential-LMI Com. Insurance v. Superior Court, supra,* 51 Cal.3d at pp. 679-680, 690-691, the court held that claims against an insurer are subject to equitable tolling by claims under an insurance policy for the period during which the insured awaits the insurer's decision.  In so concluding, the court determined that tolling was appropriate when the insurer "has received timely notice of the loss and thus is able to investigate the claim without suffering prejudice."  (*Id*. at p. 691.)  As explained above, the Calderons provided no such notice to

respondents. In sum, the FAC fails to plead facts sufficient under the doctrine of equitable tolling to avoid the applicable statutes of limitations.[6]

E. *Leave To Amend*

We turn to whether the trial court properly sustained the demurrer without leave to amend. Although the Calderons requested leave to amend before the trial court and have renewed that request on appeal, they have offered no specific amendments to their complaint. We thus discern no abuse of discretion in the trial court's ruling. As explained in *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, "[t]he burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial

---

[6] For the first time on appeal, the Calderons' reply brief contends that in view of the Home Affordable Modification Program (HAMP) initiated by the United States Department of the Treasury in 2008, their discussions with BOA regarding a loan modification constituted a "first claim," for purposes of equitable tolling. Because they did not raise this contention in their opening brief, they have forfeited it. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.) Moreover, were we to address it, we would reject it. As explained in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 69, although California and the federal government have established programs -- including HAMP -- to aid homeowners at risk of losing their homes through foreclosure, "'there is no express duty on a lender's part to grant a modification under state or federal loan modification statutes.'" (Quoting *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 903.) Thus, the existence of HAMP did not, by itself, render the Calderons' discussions with BOA a claim for a loan modification for purposes of equitable tolling.

court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]"

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


COLLINS, J.

24